15646

KELLY v. POSTAL TELEGRAPH-CABLE COMPANY

(30 S. E. (2d), 369)

August, 1943.

*Messrs. Willcox, Hardee, Houck & Wallace,* of Florence, S. C., Counsel for Appellant,

*Mr. C. T. McDonald,* of Florence., S. C., Counsel for Respondent,

May 8, 1944.

MR. ASSOCIATE JUSTICE FISHBURNE delivered the unanimous Opinion of the Court:

The respondent was employed as a messenger boy by Postal Telegraph-Cable Company, appellant and self-insurer. His daily duties required the use of a bicycle. Some time in the year 1939 or 1940; while so employed, he received an accidental injury to his right leg, arising out of and in the course of his employment, and filed claim therefor under the provisions of the Workmen's Compensation Act. 39 St. at

Large, Page 1231. Following the accident, he underwent a long period of medical and hospital treatment, and on or about November 11, 1941, he was discharged from the hospital as fully recovered. A final compensation settlement was had at that time.

Soon after his discharge from the hospital he filed with the Industrial Commission an application for a further hearing upon the ground that there had been a change in his condition; and pursuant to such application another hearing was held on April 30, 1942. A final hearing was held on January 22, 1943.

An opinion and award in the case was filed by the hearing commissioner on March 4, 1943, in which he directed, among other things, that there be paid to the respondent temporary total disability from the date of his injury to and inclusive of January 22, 1943, at the rate of $5.00 per week, after allowing credit for all wages and compensation previously paid the respondent, and that he be paid 50% loss for the use of his right leg; and also the sum of $1,500.00 for serious bodily disfigurement. This award was confirmed by the full commission, and upon appeal to the Circuit Court was affirmed.

It is conceded by appellant that there was sufficient evidence to support the finding of fact of the Industrial Commission that the respondent had undergone a change in condition. It is also admitted that the evidence was sufficient to support the finding that the respondent limped and swung his foot outward conspicuously and awkwardly when he walked. The appeal to this Court presents questions relating solely to the award for serious bodily disfigurement.

The claimant at the time he received the accidental injury to his right leg, was about 16 years of age. He was examined by Dr. J. Richardson Allison, a specialist in skin diseases, in May, 1942, about two years after the original injury, and he diagnosed the condition of claimant's leg as Bazins disease. Dr. Allison said that he found the leg en-

larged and the skin generally inflamed. There were present several large scars that were devitalized and atrophic, and there was evidence of extensive skin graft which had been performed upon the leg. In addition to the swelling, he found several ulcers symptomatic of Bazins disease, all of which presented a dirty, necrotic, punched out and unhealthy appearance.

Dr. Allison saw the claimant again on June 15, 1942, and on July 10, 1942. On the latter date he found the leg in very bad condition. One of the ulcers had broken down, there was inflammation all around it, and he had a generalized dermatitis. On the day of the last hearing before the Commissioner, viz.: January 22, 1943, Dr. Allison again examined the claimant, and found the right leg swollen and much larger than the left leg. He stated: "There is a deep seated disturbance of the circulation which tends to congestion beneath the skin, causing an enlargement of his leg. * * * I don't see any chance of the leg ever becoming normal. Whenever you have scars resulting from old ulcers caused by Bazins disease, the scars are known to be devitalized and less resistant to ordinary wear and tear and are always potential ulcers; * * * there is a general disturbance either in the circulation or the lymphatic in that boy's leg."

The doctor expressed the belief that if the boy engaged in hard manual labor it would bring about a recurrence of his troubles, that in order for the disease to be arrested, the claimant should wear an elastic stocking; pay special attention to his diet, and put no undue strain upon his leg. With reference to the continuance of the claimant's limping, due to the condition of his right leg, Dr. Allison said: "It just depends on how much pain he is going to have. He has no deformity of his joints which would produce a limp; I don't think he would limp unless he gets another ulcer and has pain, unless he has extra swelling." He went on to say that, "riding a bicycle and walking are the things which will bring back a recurrence on him, if nothing else will"; and

that operating an automobile or taxi would adversely affect the leg.

Considering claimant's status in life, his limited education, financial condition, and the anticipation that he would have to earn a living by manual labor, Dr. Allison continued: "I assume that that leg has got to be used much more than I would use mine, for instance, for him to make a living; and the more he uses it the worst it is going to be."

We have dwelt somewhat at length upon the testimony of Dr. Allison. It not only throws light upon appellant's exceptions, but also furnishes an enlightening background of the case.

Appellant contends that an employee is not entitled to an award for serious bodily disfigurement when the serious bodily disfigurement relied on is due entirely to pain. By the admissions of appellant, and in the light of Dr. Allison's testimony, there can be no doubt but that claimant is affected by a serious bodily disfigurement, in that by reason of his diseased leg he limps and swings his foot outward, conspicuously and awkwardly. It is argued that this effect is brought about solely through pain.

But what causes the pain? The testimony, we think, shows the direct causation. If he had never sustained the injury, there would be no disease, no pain; there would be no limp, nor would the leg be contaminated by repulsive ulcers.

The claimant in his testimony stated that if he walked a block, the pain in his leg commenced, and he was forced to favor it. We think it may reasonably be inferred from all of the testimony that this condition will continue, and that the leg will never become normal again. It is obvious that the pain is the direct result of the injury. And if the pain, in conjunction with the injury, brings about a serious bodily disfigurement, as it does in this case, the commission was justified in making the award. The facts here are analogous to those found in *Godfrey v. Watts Mills,* 199 S. C., 437, 19 S. E. (2d), 902.

Appellant complains that claimant has failed to prove that the bodily disfigurement relied upon has diminished his earning power and prevented him from obtaining employment.

There was testimony before the hearing commissioner tending to show that claimant had been refused employment because of the condition of his leg, from which it may easily be inferred that his bodily disfigurement adversely affected his earning power.

It is also argued that at the time of the final hearing, it was shown by the evidence that claimant had been continuously employed, and was receiving wages much greater than he received before the accident—which clearly demonstrated that his earning capacity had not been adversely affected by his disfigurement. Claimant testified that he was employed by a taxicab company, and was receiving an average weekly wage of $22.50. Several months prior to this work he had been employed in a moving picture theater in the city of Florence, at a weekly wage of $9.00. In the theater job he took up tickets, his hours were short, no walking was required, and he was permitted to sit down at intervals. It may reasonably be inferred from claimant's testimony that with reference to all of the work he undertook to do, including that of taxicab driver, he was handicapped by his bodily disfigurement. His leg would be about normal in the morning if he got a full night's rest, but would become swollen throughout the day.

We think appellant overlooks the fact, with respect to claimant's employment as a taxicab driver and the increase in his wages—that claimant since his injury, had emerged from boyhood to young manhood.

This case is governed by *Tinsley v. Walgreen Drug Co.*, 197 S. C., 415, 15 S. E. (2d), 667; *Jewell v. R. B. Pond Co.*, 198 S. C., 86, 15 S. E. (2d), 684; and *Haynes v. Ware Shoals Mfg. Co.*, 198 S. C., 75, 15 S. E. (2d), 846, 847.

In the *Haynes case* it is said:

"The fact that the claimant was of the same employment status at the time of the hearing is not necessarily controlling. It was one of the circumstances for the consideration of the fact-finding body, the Commission. In *Tinsley v. Walgreen Drug Company et al., supra,* the claimant at the time of the hearing was working for another employer at the same sort of occupation and at practically the same wages ($7.50 against $8.00 per week) and there was no testimony that she had been refused employment because of her disfigurement, but the physical fact of the latter and its probable consequences found by the Commission in the making of the award were not overcome by claimant's employment status at the time of the hearing."

Finally, it is said that claimant is not entitled to an award for serious bodily disfigurement where he has received an award for total disability, or the equivalent of total disability by working continuously and receiving a weekly wage in excess of what he was earning at the time of his injury. Our attention is directed to the case of *Burnette v. Startex Mills,* 195 S. C., 118, 10 S. E. (2d), 164, where it was held that an employee under the Workmen's Compensation Act is not entitled to an award for serious bodily disfigurement where he is receiving compensation for total and permanent disability.

It is only necessary to point out that the award in this case did not cover total and permanent disability; but was a finding that claimant had suffered a 50% loss of the use of his right leg. The decision in the *Burnette case* does not extend to or include the factual situation which we have here.

Judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES STUKES, TAYLOR and OXNER concur.