15748

PARROTT v. BARFIELD USED PARTS *ET AL.*

(34 S. E. (2d), 802)

*Messrs. McDonald & McGowan,* of Florence, Counsel for Appellant,

*Messrs. Willcox, Hardee, Houck & Wallace,* of Florence, S. C., Counsel for Respondents,

July 10, 1945.

MR. ASSOCIATE JUSTICE TAYLOR delivered the majority Opinion of the Court.

The order of Honorable L. D. LIDE, Circuit Judge, which will be reported, sets forth clearly the facts and questions involved in this case. The conclusions therein are amply supported by the record and the authorities and meets with the approval of this Court.

It is argued in this case that the observation of the claimant by an Industrial Commissioner and the conclusion of such Commissioner that the claimant has a serious bodily disfigurement is in itself sufficient evidence to support a disfigurement award. We do not subscribe to this view. When there is competent evidence of disfigure-

ment and the claimant is viewed by the full Commission and a finding of disfigurement is made, this Court will not undertake to substitute its judgment for that of the full Commission. However, where there is no competent evidence of disfigurement the conclusion of the hearing Commissioner, concurred in by the full Commission, cannot be substituted for evidence. *Ferguson v. State Highway Department,* 197 S. C., 520, 15 S. E., 775. There is no competent evidence of disfigurement in this, case unless sitting down and getting up slowly is to be so considered and this Court is of the opinion that it is not so contemplated within the meaning of the Workmen's Compensation Act. Code 1942, § 7035-1 *et seq.* This case is one of muscular strain only and nothing grotesque or unsightly is involved; hence this Court is of the opinion that an award for disfigurement under the evidence cannot stand.

Judge Lide, in his order, considers the question as to the right of a Circuit Judge, where a matter of disfigurement is involved, to examine or observe the claimant in the consideration of the appeal. In a disfigurement case the claimant is for all practical purposes an exhibit and his appearance may be considered along with the testimony by the Circuit Judge (and this Court on appeal) in reaching a conclusion, as to whether there is any evidence upon which there is a reasonable basis for an award for serious bodily disfigurement.

All questions raised by the exceptions have been carefully considered and it is the opinion of this Court that the judgment of the Circuit Court should be affirmed and it is so ordered.

Let the order of the Circuit Court be reported herewith.

Mr. Chief Justice Baker and Messrs. Associate Justices Fishburne and Oxner concur.

Mr. Associate Justice Stukes (dissenting in part):

I concur in so much of the proposed judgment as affirms the Circuit Court's reversal of the Commission's award for

partial disability for the fact stands out that claimant is earning about a third more than before his accident and there was no evidence that without the injury he would be earning even more, and likewise no evidence that his present earnings are due to anything except his ability to work in somewhat similar employment to that in which he was engaged before the injury. See on this and related subjects the annotation in 149 A. L. R., 413.

However, I respectfully dissent from the denial of the award for disfigurement and I think it should stand as made by the Commission. This appears to be the first case which has reached this Court for decision in which the 1941 legislative amendment to the Compensation Act should be applied. It radically changed the existing law relating to disfigurement and disfigurement awards. 42 St. at Large, p. 221. There was added to the original Section 31, sub-sec. (t) (now codified as Section 7035-34, Code of 1942), the following: "And provided, further, that disfigurement shall also include the loss or serious or permanent injury of any member or organ of the body for which no compensation is payable under the schedule of specific injuries set out in this section. And, provided, further, that in cases of bodily disfigurement it shall not be necessary for the employee to prove that disfigurement handicaps him in retaining or procuring employment, or that it interferes with his earning capacity."

It was said in *Ingle v. Mills*, 204 S. C., 505, 30 S. E. (2d), 301, 303, with respect to the former requirement that bodily disfigurement must affect earning capacity or ability to obtain employment in order to be compensable, as follows: "The amendment of 1941, inapplicable here for the reason stated, has changed the law in this respect. It was said in the opinion in our recent case of *Montgomery v. York Mills, Inc., et al.* [204 S. C., 469], 30 S. E. (2d), 68, referring to the first clause of the amendment, that it 'simply added unscheduled members and organs of the body to the sched-

uled members in Section 31 as subjects for an award for bodily disfigurement, apparently having as its genesis the opinion of this Court in *Manning v. Gossett Mills,* 192 S. C., 262, 6 S. E. (2d), 256.' "

Moreover, the 1941 amendment went further than removing the necessity of effect upon earning power, in the first portion, which provides: "That disfigurement shall also include the loss or serious or permanent injury of any member or organ of the body for which no compensation is payable under the schedule of specific injuries * * *." Thus in plain language the General Assembly has said that loss or serious or permanent injury of any unscheduled member of the body constitutes disfigurement. Former definitions of. this term by the Court have largely lost their significance, in view of this enactment. Such was partially recognized by the learned trial Judge, but not fully so, when he said in his order: "While it is not necessary that the disfigurement be 'grotesque and unsightly to such an extent that it renders him obnoxious and repulsive', it is, however, essential that it at least be of a character which impairs the appearance of the person or which renders him unsightly, imperfect, or deformed in some manner. See *Godfrey v. Watts Mills,* 199 S. C., 437, 19 S. E. (2d), 902, and the cases therein cited."

It should be observed that perhaps "radical" is too strong an adjective to fittingly describe the change wrought in the law by the 1941 amendment whereby the formerly requisite relation between a compensable disfigurement and earning power was excluded. This because the other awards (other than for disfigurement) authorized by the original Sec. 31 of the Act (now Sec. 7035-34, Code of 1942), which was amended, were, and are, not dependent upon diminution of earning power. They are fixed, compulsory awards for the respective specific injuries enumerated. To them was merely added bodily disfigurement, as defined in the amendment, with the amount of the award discretionary with the commission (within $2,500.00). The following pertinent quo-

tation is from 149 A. L. R., 449, 450: "Schedule injuries. As a rule, compensation acts contain, in addition to the general provisions by which compensation benefits are related to a decrease or loss of earning capacity, a list of specific injuries for which definite awards of compensation are provided. Any award of compensation for an injury included in such a list is exclusively fixed and determined by the amount listed, and does not depend on any decrease in earning capacity. Consequently, recovery can be had without regard to the fact that the wages of the injured employee are the same as, or higher than, they were prior to the injury." Under our present law, disfigurement is a "specific injury" for the purpose of the consideration of the instant problem and application of the foregoing authority.

In this case the Industrial Commission awarded $800.00 for serious bodily disfigurement which the Hearing Commissioner recited in his findings was observed by him; and before him, and before the Commission on appeal, there was certainly evidence to sustain the fact that claimant's spine had been seriously injured in the accident. He testified that his back bothered him "pretty bad at times", sometimes worse than others, more in the morning than at midday, and that when he sits for a while his back becomes so stiff that he can "hardly straighten up"; and that he had changed to an easier job but that when he lifts anything heavy, pain "grabs him in the back." Several physicians attended him and his medical witness, Dr. J. D. Smyser of Florence, testified, in part, as follows:

"A. I found on examination that he was tense along the lumbar spine. There was an evidence of soft tissue pathology and from the history and from the $x$-ray findings, my diagnosis was myofacitis.

"Q. Doctor, take that in plain language, what is that? A. In the man's muscles where the muscle and facia are attached to his bone.

"Q. A person in that situation is more or less permanent would you say? A. Those conditions are painful to the subject. Excessive lifting or straining of the muscles of the back; and oftentimes it is relieved by doing a fasciatomy, allowing the muscles to have more freedom of action.

* * * * *

"Q. As a result of your examination and diagnosis of this case, tell the Court what percent., if any, you could rate the claimant in this case? A. Well, I mentioned in the testimony a minute ago he has a limitation for probably lifting heavy objects prior to this muscular inflammation. I mention also in damp weather will have—will trouble him probably on backwards movement for a time. The inflammation is great enough to cause much contraction of the fashia. It will continue to get worse. Of course, there is always a possibility in these conditions later on an injury of this kind can develop an intervertable disk. Need an operation of doing what is known as falamanectomy (?) Removing a disk.

"Q. Removing disk? A. Yes, sir. Part of a vertebra.

"Q. That is taking the disk from between the vertebra? A. Yes, sir.

"Q. It wouldn't perform the function? A. Wouldn't do the function.

"Q. Taking all things into consideration, what percentage would you say? A. At the present time, I would say 20 to 25%.

The employer offered Dr. L. M. Lide as a witness. Claimant was sent to him when he had to leave his work on account of the injury and this physician testified that he treated him for a wrenched back (quoting): "The usual treatment for muscular back injuries; shortwave diathemy and later on his back was strapped with adhesive tape to support the muscles."

Dr. Lide further testified that he advised claimant to return to his work after about two weeks' treatment and that

he did not see him afterward. In view of the latter his testimony that he considered the injury only temporary is of little value. He also testified as follows: "A. As I say, a muscle injury is due to a strain, in my opinion it always recovers in a reasonable length of time. Fixing the time is somewhat variable.

"Q. You represented the insurance carrier in the examination? A. I presume they sent him to me; thought he needed some medicine."

Reference has been made to the statement in the award by the Hearing Commissioner to the effect that disfigurement existed and was *observed* by the Commissioner. In his statement of the case he said: "It appears from the testimony that his (claimant's) movements are limited, that is he cannot stoop, twist his body, or lift, as he could normally before the injury." It is of no consequence that these findings and conclusions of the Hearing Commissioner may not have been stated as fully or in as proper place as they might have been. Exactness of form and procedure cannot be reasonably required of a lay body, which the Industrial Commission is. *Henderson v. Graniteville Co.*, 197 S. C., 420, 15 S. E. (2d), 637.

Factual findings of the commission are binding upon the courts when there is evidence in the record to sustain them. South Carolina decisions in 34 S. E. Dig., Part 2, p. 858 *et seq.*, Workmen's Compensation, Key 1939. When the commission makes an award within the law (here particularly the 1941 amendment to the Act) which is founded upon competent evidence in the record, the duty of the court is obvious—the award must be sustained upon appeal. The fact of disfigurement and the degree of it are for determination by the commission ,not the court. *Schwartz v. Mount Vernon-Woodberry Mills, Inc.*, 206 S. C., 227, 33 S. E. (2d), 517.

It clearly appears to me that not only is there evidence in this case which sustains the award for serious bodily dis-

figurement but the latter was established by the fair preponderance of the evidence—in excess of the rule. I think the fact of this back injury, for which the rather moderate disfigurement award was made, is being obscured by the outstanding fact that claimant has earned more wages since the accident than before which, however, does not eradicate the spinal injury which may, under the testimony, well be with claimant as long as he lives.

The recent opinion of this Court in *Hamilton v. Little*, 197 S. C., 434, 15 S. E. (2d), 662, 664, is a well-considered one. Claimant was left after the accident there involved with a partial disabled leg, visible only as a limp. I quote at length from the opinion as follows:

"The legal principles enunciated in the two foregoing cases and the criterion of the right of claimant to compensation as stated in *Manning v. Gossett Mills, supra,* stand without question but we believe the distinguished and learned Circuit Judge has fallen into inadvertent error in the application of these principles to the facts of this case by an interpretation of the language of the witnesses whereby he reaches a different conclusion of fact from that of the fact-finding body. It is the duty and power of the appellate Courts to study the testimony to determine whether there is any evidence to support the findings of fact of the fact-finding body (the Industrial Commission), but an interpretation or construction thereof adverse to that found by the Commission, when the evidence is susceptible of more than one reasonable interpretation or meaning, is an invasion of the province of the Commission."

"In addition to the oral testimony of Dr. Stalvey and of the claimant, the single Commissioner, as well as the full Commission, had the benefit of observing the claimant, which observation afforded them an opportunity to determine, from concrete evidence, the actual outward appearance of claimant's disfigurement. Judge Lide, not having the benefit of this personal observation, comments upon the dif-

ference in the degree of the limp as described by Dr. Stalvey, who refers to it as a slight limp, and as described by the hearing Commissioner in terms of a 'decided limp' and as 'particularly noticeable.' The differences appearing from the testimony in the degree of the limp is but another instance of contradictions in the evidence of a litigant that have to be decided by the fact-finding body. However, the order of reversal goes on to say, 'it will be observed that it is undisputed that the only visible disfigurement of any kind is the limp, for the enlarged and atrophied areas in his left leg and the injury to the tibia bone causing a limp are, of course, all concealed by his clothing. This alleged disfigurement by reason of this limp is obviously neither grotesque nor repulsive, nor is the claimant made offensive to the sight of his associates or his appearance less pleasing to persons of ordinary sensibilities.' The record discloses that the abnormality of carriage which claimant suffers is due to the malformation of his leg, after the injury, resulting in an unusual physical condition and only known to the public by reason of the limp, the actual appearance of the disfigurement being concealed by clothing. In cases of bodily disfigurement it is not necessary to have the actual disfigurement under the observation of the public, but the essential is the existence of a disfigurement of the body that lessens earning capacity and is in deprivation of the power to obtain employment. The actual appearance of the disfigurement is the criterion in cases of facial disfigurement, but not necessarily in bodily disfigurement.

"The lessening of earning capacity and loss of power to obtain employment in whole or in part may be by reason of nothing more than the existence of a bodily disfigurement or may be by reason of a bodily disfigurement that is grotesque or repulsive so as to render one offensive to sight or less pleasing to employer, fellow worker or customers.

"The order appealed from holds that the award for bodily disfigurement in this case would be inconsistent with the

judgment of the Court in the case of *Murdaugh v. Robert Lee Construction Company,* 185 S. C., 497, 194 S. E., 447; in which case the claimant's leg, as a result of an accident was at least one and one-quarter to two inches shorter than the right leg, causing a noticeable and very apparent limp in the left leg. Compensation was allowed by the full Commission for disability, but the claim for disfigurement was rejected. Upon appeal Judge Gaston allowed compensation for disability and bodily disfigurement. This Court, on appeal, reversed Judge Gaston, holding that although the Commission erred in deciding it could not award compensation for loss and disfigurement to the same member of the body, nevertheless the Commission also found as a fact that there was no disfigurement as would handicap the claimant in seeking employment. The inconsistency between the case just above discussed and the present case lies not within the judgment of this Court but in the findings of fact by the Commission.

"While there may have been a question of fact whether the limp was 'slight', as described by Dr. Stalvey, or 'decided' as referred to by the Hearing Commissioner, this issue of fact is concluded in favor of claimant as the hearing Commissioner had the right to observe, as competent evidence, the claimant and his limp."

Removing the element of the formerly required causal connection between compensable disfigurement and earning capacity, the foregoing case is authority, I think, for the sustention of the instant award. And the General Assembly, the lawmaking body, has destroyed the necessity of this former element, requisite at the time of the accident in *Hamilton v. Little,* by the enactment of the 1941 amendment. The present case comes clearly within the latter. The Commission has found that claimant's spine, an unscheduled member of his body, was seriously or permanently injured, to which the first part of the amendment is relevant, and the second part plainly eliminates the former requirement of

a supplemental finding that the disfigurement affects earning capacity.

I think it is entirely unnecessary, and therefore improper, to decide in this case, as Mr. Justice TAYLOR proposes to do, that the claimant himself is insufficient· evidence, upon observation, to support a disfigurement award by the Commission. In this proceeding there was other evidence, but if there were none except the body of claimant and testimony connecting its visibly disfigured condition with a ·compensable accident, would it be reasonable to require more? And would not such requirement violate Code Sec. 7035-63?

In the lengthy quotation from *Hamilton v. Little, supra,* the value of claimant as an exhibit in the evidence is referred to approvingly. It was said in the subsequent case of *Haynes v. Ware Shoals,* 198 S. C., 75, 15 S. E. (2d), 846, 847: "In addition to this testimony the Hearing Commissioner and the Commission had before them the claimant himself, which was important evidence as is pointed out in *Hamilton v. Little, supra.*" Similar reference to the person of claimant as evidence was made in *Ferguson v. Highway Department,* · 197 S. C., 520, 15 S. E. (2d), 775.

I fail to see reason in the requirement of parol testimony in support of a conclusion of the Hearing Commissioner or the Industrial Commission that disfigurement exists, made after observation of a claimant. On the contrary, I think in many cases the claimant's body and movements are the very best evidence upon the question of disfigurement; and when the latter is found and the condition is shown by testimony to be the result of a compensable accident, what need is there, in the ordinary case, of other evidence? Would not the latter be but the opinions of claimant and his witnesses? Doubtless the Hearing Commissioner or the Commission should recite in the findings the facts which were observed, upon which the conclusion of disfigurement is based (which was briefly done in this case), but that is far from requiring evidence in addition to observation of claimant.

I would reverse the judgment under appeal in so far as it set aside the disfigurement award and reinstate the latter.

The order of JUDGE LIDE:

The South Carolina Industrial Commission by its opinion and award rendered June 9, 1944, ordered that the defendants should pay to the claimant compensation for temporary total disability from March 29, 1943, to April 12, 1943, amounting to two weeks at his compensable wage of $15.01, the total sum being $30.02; and further ordered that the defendants should also pay to the claimant for 20 per cent. permanent disability at the rate of $3.00 per week for the period of 298 weeks making a total of $894.00; and further ordered that the defendants should pay to the claimant the sum of $800.00 for serious bodily disfigurement; and should also pay certain expenses and hearing costs; by reason of an accident alleged to have been sustained by the claimant. The defendants appealed to this Court upon several exceptions alleging error in awarding the claimant the sum of $894.00 for permanent partial disability, and also in awarding the claimant the sum of $800.00 on account of an alleged serious bodily disfigurement. The exceptions, however, do not appear to question the award in the sum of $30.02 for temporary total disability, or the award for costs and certain expenses.

The claimant sustained an injury to his back while engaged in his duties as an employee of Barfield Used Parts, the employer. The employer's business relates to automotive vehicles. And it appears from the testimony that the employee's duties were, as he says, "working on the parts and mechanical work, equipment and everything."

The claimant was injured March 29, 1943, and as a result thereof he did not work between March 29, 1943, and April 12, 1943, for which the award of $30.02 was made as above stated, and concerning which there is no question. On or about April 12, 1943, he returned to work, but shortly thereafter voluntarily changed his employment, taking a job

as a mechanic for another employer who operated somewhat different type of automobile business. And he has continued in that employment.

The hearing upon this claim was held before Commissioner Duncan on November 22, 1943, and on February 23, 1944, he made an award in favor of claimant, which upon review by the full Commission was sustained in all respects, the purport of the opinion and award of the full Commission having been given above.

The exceptions upon which the defendants rest their appeal involve two fundamental questions which may be stated as follows:

(1) Is the claimant entitled to compensation for partial disability after he returned to work, in the light of the fact that, notwithstanding the accident, he has suffered no diminution in earnings, but on the contrary has obtained larger earnings?

(2) Is the claimant entitled to compensation for serious bodily disfigurement?

Referring to the first question, the claimant was earning at the time of the accident which resulted in his injury $25.00 per week (he says "about" $25.00). And there is no testimony indicating that upon his return to work for the defendant employer his earnings were reduced. In his new job claimant, from the time of his change of job to the time of the hearing before the Hearing Commissioner (and presumably thereafter), was earning $37.00 per week (he says "about" $37.00). In his new job as shown by the evidence he has been working "pretty regularly". He testified that the injury received by him which resulted from his being struck by a truck motor which he and another employee were engaged in unloading bothered him all the time, but was worse at times; and he says: "In the mornings it bothers me more than in the middle of the day. If I sit down for a while my back gets stiff—so stiff I can hardly straighten up." In his new employment he works nine hours a day,

five and one-half days a week. He performs the duties of a mechanic, working on trucks, automobile motors, etc., having left his original employment because the new job was (quoting): "Easier and paid more." The difference in the work as explained by him is: "We don't turn over cars down there and all that stuff out in the field but have something to pick up with and a jack".

The Workmen's Compensation Act now embodied in Section 7035 (including numerous subsections), Code 1942, clearly defines "disability" and "partial disability." Section 7035-2 (i) is as follows: "The term 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." And Section 7035-33 (Section 30 of the original Act) provides that the weekly compensation for partial disability shall be "equal to sixty (60) per centum of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter", with certain other stipulations not material in this connection. It will thus be seen that the Workmen's Compensation Act was not intended to provide any award for pain and suffering as such or for any of the other elements of damages recoverable in an ordinary action for personal injuries, except to the extent that the employee has sustained an injury resulting in the diminution of his earnings or a serious bodily disfigurement.

The North Carolina case of *Branham v. Denny Roll & Panel Co.*, 223 N. C., 233, 25 S. E. (2d), 865, 868, while of course not binding upon this Court, is highly persuasive, because it relates to practically the same question now under consideration, and the North Carolina Act is substantially the same as ours as to the particular sections involved. I quote the following from the unanimous opinion of the North Carolina Supreme Court:

"What then is the meaning of 'disability' as used in the statute? It is defined in the Act: 'The term "disability"

means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.' Sec. 2(i).

"The disability because of the injury is to be measured by the capacity or incapacity of the employee to earn the wages he was receiving at the time of the injury. It is not his inability to do the identical kind or type of work as theretofore. That is to say, the right to compensation is not dependent upon the inability to do substantially the same work as before the injury. It is confined to the loss of ability to earn in the same or any other employment. *Smith v. Swift & Co.*, 212 N. C., 608, 194 S. E., 106.

"In short, under our Act wages earned, or the capacity to earn wages, is the test of earning capacity, or, to state it differently, the diminution of the power or capacity to earn is the measure of compensability.

"It follows that, as the claimant is now earning wages in an amount equal to those received by him prior to his injury, he has failed to show any compensable injury or incapacity."

It should also be stated that in the North Carolina case as appears from the opinion it was argued in behalf of the employee that he was not actually earning the wages paid to him after his injury, but that such payment was due to his employer's sympathy, but this argument was rejected by the Court because of the express terms of the Act. And it may be observed that in the case at bar there was no suggestion whatever that the wages received by the claimant in his new employment were due to any peculiar or unusual circumstances in any respect.

It will also be observed that the Commission disregarded the provisions of Section 7035-33 (originally Section 30) because they based their award on 20 per cent. of claimant's compensable weekly wages and certainly not upon the basis of 60 per cent. of the difference between his average weekly wages before the injury and the average

weekly wages which he was able to earn thereafter, for the latter by the undisputed evidence exceeds the former.

Apparently, the Commission's conclusion is founded on the testimony of a competent physician who testified in behalf of the claimant to the effect that in his opinion the claimant had suffered "20 or 25%" disability, while another competent physician, testifying for defendants, thought there was no disability. But the statute provides how disability shall be determined. Hence, medical opinion as to the extent of disability can have no probative value as against actual earnings.

I am, therefore, of opinion that the first question must be answered in the negative, that is to say, in favor of the defendants as appellants.

Referring to the second question, relating to serious bodily disfigurement, the governing statutory provisions are contained in Section 7035-34, in which is incorporated certain amendments to the original Act, and from which it will be seen that it is now immaterial whether such disfigurement affects the earning power of the employee or his capacity to retain or procure employment, and that a workman is entitled to reasonable compensation for serious bodily disfigurement without regard to earning capacity. And our Supreme Court has held in a number of cases that in order to constitute such disfigurement it must be more than slight and must partake of permanency. While it is not necessary that the disfigurement be "grotesque and unsightly to such an extent that it renders him obnoxious and repulsive", it is, however, essential that it at least be of a character which impairs the appearance of the person or which renders him unsightly, imperfect, or deformed in some manner. See *Godfrey v. Watts Mills,* 199 S. C., 437, 19 S. E. (2d), 902, and the cases therein cited.

I have made a rather intensive study of the entire record in this case, and I am unable to find any evidence to support an award for "serious bodily disfigurement". There is, it

is true, testimony by the claimant to the effect that, as a result of the injury sustained by him, when he sits down "for a while" his back gets "stiff—so stiff I can hardly straighten up." According to the physician who testified in his behalf the claimant "has a limitation for probably lifting heavy objects"; and in damp weather his condition "will trouble him probably on backwards movements for a time"; but there is no medical or other testimony that the injury resulted in any serious bodily disfigurement or indeed any bodily disfigurement of any degree. There is no evidence whatever of any element of unsightliness in the claimant's appearance; and his description of his condition would characterize many elderly people who could not be deemed disfigured. There is no suggestion in his testimony that by reason of the condition described by him he is unable to stand or walk erectly.

The Hearing Commissioner in his opinion and award held that as a result of the injury sustained by the claimant "there is a definite serious bodily disfigurement"; and he says further that this was such as was "contemplated under the Act and *observed by this Commissioner*". (Emphasis added.) This would indicate that the Hearing Commissioner based his findings in this respect upon his observation of the claimant. Where a claimant testifies before a Hearing Commissioner his appearance is necessarily observed by the Commissioner and doubtless would be considered by him *in connection with the testimony* in determining the question of serious bodily disfigurement. But it does not seem to me that there could be finding of serious bodily disfigurement *predicated solely upon the observation* of the claimant by the Hearing Commissioner or the full Commission. There is, however, nothing in the opinion and award of the full Commission indicating that they saw or observed the claimant in this case. And it will be noted that while the Hearing Commissioner refers to a *definite* serious bodily disfigurement he does not state what it consisted of, and while he

also makes reference to his observation of the claimant, he does not say just what claimant's appearance was.

Treating the Industrial Commission as a *quasi*-judicial body, its jurisdiction and powers can be exercised only upon the facts appearing in the record. Whether it be treated as a special or limited tribunal, without the benefit of any presumptions in favor of the propriety of the exercise of its jurisdiction or powers (see 71 C. J., 917-920), or as a Court, its conclusions must be supported by the testimony adduced before it, and upon an appeal to this Court from an award made by the Commission the record brought up for review must necessarily contain testimony requisite to warrant the terms of the award.

Hence the award for serious bodily disfigurement made in this case cannot, in my judgment, be supported on the theory that the observation of the claimant by the Hearing Commissioner. disclosed matters not apparent in the testimony. To hold otherwise would be to say in effect that necessary evidence descriptive of the condition and appearance of a claimant can be left out of the record and that the opinion of the Hearing Commissioner and the Full Commission, based upon such missing evidence, can be made a substitute for the evidence or have the effect of supplying it.

I think it is proper for me to state that at the hearing before me counsel for the defendants stated that he had given notice to counsel for the claimant that the claimant should be brought before the Court upon the hearing of the appeal. The claimant was not present at the hearing, and I have never seen him. But even if he had been present, would the Court acting in an appellate capacity have had the right to examine or observe the claimant to obtain information or evidence in the consideration of the appeal?

Both the attorneys for the respective parties to this appeal have given the Court the benefit of their well-prepared briefs, and counsel for the claimant relies strongly upon the

recent case of *Kelly v. Postal Telegraph-Cable Co.,* 204
S. C., 530, 30 S. E. (2d), 369, opinion filed May 8, 1944,
but that case does not seem to me to be in point. As was
stated by the Court, the appeal presented "questions relating
solely to the award for serious bodily disfigurement"; and
the opinion also states that it was admitted "that the evi-
dence was sufficient to support the finding that the respond-
ent limped and swung his foot outward conspicuously and
awkwardly when he walked". In view of this evidence and
the other circumstances disclosed by the record the Supreme
Court sustained the award.

Counsel for the claimant further suggests in argu-
ment that if the testimony on the subject of disfig-
urement appears to the Court to be insufficient, the
cause should be recommitted to the Commission for the
taking of additional testimony. But I do not find anything in
the Act which contemplates a proceeding of this character. It
is not stated that there are any inaccuracies or omissions
in the transcript of the testimony before the Court, or that
any additional testimony would be in the nature of after-
discovered evidence within Rule 16 of the Commission.
Hence, I do not think I would have any authority to re-
commit this case to the Commission for the taking of addi-
tional testimony, there having been a full and final hearing
and a final award.

I am of the opinion that the second question hereinbefore
stated must likewise be answered in the negative, that is to
say, in favor of the defendants as appellants.

It follows therefore that so much of the award of the
South Carolina Industrial Commission as relates to the
award of weekly compensation for alleged partial permanent
disability in the aggregate sum of $894.00, and as relates
to the award in the sum of $800.00, for serious bodily dis-
figurement, should be set aside and reversed. But the re-
mainder of the award should remain in full force and effect,
to wit, so much thereof as provides that the defendants shall

pay to the claimant compensation for temporary total disability amounting to $30.02, and that the defendants shall also pay certain bills theretofore incurred described in the award as "all medical, doctors, surgical, hospital and nurses bills, as well as all other bills incurred as a result of this accident"; and that the defendants shall also pay the hearing costs in the case. And it is so ordered.