18867

Hoyt OWENS, Respondent, v. Cranel B. HERNDON, and American
Mutual Liability Insurance Company, Appellants

(165 S. E. (2d) 696)

*Messrs. Barnwell, Whaley, Stevenson & Patterson,* of Charleston, *for Appellants,*

*Messrs. Murdaugh, Eltzroth & Peters,* of Hampton, *for Respondent,*

February 3, 1969.

BRAILSFORD, Justice.

In this workmen's compensation case the employee, a mechanic, sustained a back injury in a compensable accident on June 21, 1964. He returned to work at his regular job on September 15, 1964. Although his back was painful, he was continuously employed as a mechanic from that date until his claim for permanent partial disability compensation

was heard on November 3, 1966. During this period his hourly rate of pay was increased from $1.70 to $2.75. He has lost about three days per month from work because of back pain, according to his estimate, but his average weekly wages have been in excess of those received prior to his injury. Based upon medical evaluation, the hearing commissioner found that claimant had sustained a "permanent physical impairment of thirty percent (30%) of his whole body," and that this impairment resulted in a corresponding "loss of wage earning capacity—thirty percent (30%) disability—in the amount of Thirty Dollars ($30.00) per week * * *."

From an award of $18.00 per week (60% of $30.00) as compensation for permanent partial disability, the employer appealed to the South Carolina Industrial Commission. The Commission, although agreeing that claimant had sustained a thirty percent permanent physical impairment from the injury, found that he had no " 'disability' within the meaning and contemplation of the Workmen's Compensation Act in that the Claimant has suffered no diminution in wages."

On appeal by claimant, the circuit court found that the only reasonable inference from the record was that claimant had sustained a compensable loss of wage earning capacity, and ordered that the award of the hearing commissioner be reinstated. The employer has appealed from this order of the circuit court.

The rights and liabilities of employee and employer under the Workmen's Compensation Act are purely statutory and are to be judged by the terms of the Act. Policy considerations as to what benefits should be conferred or obligations imposed are strictly for the legislature. Disability is defined in the Act, Section 72-10, Code of 1962, as "incapacity because of injury to earn wages which the employee was receiving at the time of injury in the same or any other employment." Where disability is partial, the employee shall receive "a weekly compensation equal to

sixty per cent of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter, * * *." Sec. 72-152, *id.*

■ By the clear terms of these sections, "compensation under the Act is not awarded for the physical injury as such, but for 'disability' produced by such injury. *The disability is to be measured by the employee's capacity or incapacity to earn the wages which he was receiving at the time of his injury.* Loss of earning capacity is the criterion. There is no recognition of the elements of pain and suffering, or of increased discomfort and difficulty in performing the work, as long as there is no diminution in earning capacity. (Citations omitted)." (Emphasis added.) *Keeter v. Clifton Mfg. Co.,* 225 S. C. 389, 392, 82 S. E. (2d) 520, 522.

■ Here, it is admitted that claimant has been regularly employed since returning to his old job on September 15, 1964. He has voluntarily changed jobs twice, each time receiving a substantial increase in pay for his services as a mechanic. Although he has suffered pain and discomfort, described by his physician as episodic, and lost time from work, his average weekly wages since September 15, 1964, have exceeded his average weekly wages before the injury. There is no suggestion that claimant's post injury wages do not represent actual earnings. Under these facts, the Commission's conclusion that claimant suffers no disability, as defined by the Act, *i. e.,* no "incapacity because of injury to earn wages which (he) was receiving at the time of injury in the same or any other employment," is required by the terms of the statute and by our decisions in *Parrott v. Barfield Used Parts,* 206 S. C. 381, 34 S. E. (2d) 802; *Keeter v. Clifton Mfg. Co.,* 225 S. C. 389, 82 S. E. (2d) 520, and *Shealy v. Algernon Blair, Inc.,* 250 S. .C. 106, 156 S. E. (2d) 646.

Reversed.

Moss, C. J., and LITTLEJOHN, J., concur.

LEWIS and BUSSEY, JJ., dissent.

BUSSEY, Justice (dissenting).

I am in agreement with Mr. Justice Brailsford that the order of the circuit court should be reversed, but think the cause should be remanded to the Commission for further proceedings and findings in accordance with the views hereinafter expressed.

Certain additional facts, in my view, warrant mention. The finding of the Commission of a "permanent physical impairment of 30% of his whole body" is supported by the testimony of the orthopedic surgeon to whom claimant was referred shortly after his injury. Claimant's testimony as to his present condition, including losing an average of three days a month from his work because of his injury, is fully corroborated by the employer's surgeon who testified, *inter alia,* that he would expect claimant's condition to get slowly worse with time. There is undisputed evidence that on one occasion claimant was refused employment because of his back condition and that his condition had not been disclosed to his last two employers. He performs his work with difficulty and is able to get by only with the assistance of fellow employees. His wife has a serious heart condition and he is compelled by the condition of his wife and economic necessity to work to the limit of his physical capacity. The surgeon for the employer testified that claimant still had days when he was totally disabled, and that claimant was a person of integrity.

Claimant's raises in hourly rate of pay were accompanied by, and no doubt resulted at least in part from, his moving from Hampton, South Carolina, where he was injured, to Charleston. He attributed the increase in the hourly rate in his pay to "the times". In addition to inflationary trends, it is well known that, as a general rule, rates of pay, as well as the cost of living, are higher in more populous cities than they are in relatively small towns. Claimant's increase in his hourly rate of pay is readily explainable on both of

the foregoing economic factors. The evidence in this case leaves no doubt whatever that the claimant, as a result of his injury, suffered an impairment of his actual earning capacity. Whether he had remained in Hampton or moved to Charleston the fact still remains that with his lost time, due to his injury, he earns less money today than he would be able to earn had he not sustained the injury. The medical testimony is to the effect that such impairment will likely increase.

Despite the foregoing facts, the Commission concluded, as a matter of law, and the majority opinion in effect holds, that claimant's post-injury earnings are legally conclusive against a finding of impaired earning capacity, as contemplated by the Act. The instant case is, I think, factually distinguishable from our prior decisions wherein compensation was dtnied on the basis of post injury earnings, and presents a question of novel impression in this jurisdiction. The precise question for consideration is, whether, under our Act, post-injury earnings equal to or in excess of earnings prior to the injury are legally conclusive against a finding of impaired earning capacity, when there is undisputed evidence to the effect that claimant has suffered an actual impairment of earning capacity in that he is earning less money than he would be capable of, but for his injury, and is to some extent handicapped in securing and retaining employment.

While this court has not heretofore had occasion to pass upon the precise question, I am of the view that under the rationale of our own decisions, as well as the weight of authority from other jurisdictions, the legal conclusion arrived at by the Commission was incorrect.

Compensation for partial disability has been denied in several of our decisions where post injury earnings were equal to or exceeded the earnings of the claimant prior to the injury and *there was nothing to show that the claimant had in fact suffered a diminution of earning capacity.* Two of our decisions, *Keeter v. Clifton Mfg. Co.,* 225 S. C. 389,

82 S. E. 2d 520 (1954) ; *Bowen v. Chiquola Mfg. Co.,* 238 S. C. 322, 120 S. E. 2d 99 (1961), have recognized that the amount of the post injury wages, averaged over a reasonable period of time, is not necessarily conclusive as to the question of diminution of earning capacity.

In the *Bowen* case it is said that such furnished a reasonable basis for comparison with the average pre-injury wage in determining whether and to what extent there has been a diminution of earning capacity. There it was recognized that "post injury earning capacity is something far less tangible than the average pre-injury wage which is generally susceptible of accurate calculation." The Bowen case is authority for the proposition that a medical estimate of the percentage of disability may furnish a reasonable basis for calculation of compensation of partial disability, and that the percentage method, as well as the dollars and cents method, calculated on the actual wage difference, affords, when fairly applied, a practical basis for approximating the compensation to which the partially disabled employee should be entitled, and that neither method was perfect and neither was required to the exclusion of the other. It would seem to logically follow that, under appropriate circumstances, resort could be properly had to both methods in arriving at a finding as to the actual diminution of earning capacity and the compensation to which a claimant is entitled.

Not directly in point but quite persuasive are the disfigurement cases of *Jewell v. R. B. Pond Co.,* 198 S. C. 86, 15 S. E. (2d) 684 (1941) ; *Kelly v. Postal Telegraph-Cable Co.,* 204 S. C. 530, 30 S. E. (2d) 369 (1944), and *Haynes v. Ware Shoals Mfg. Co.,* 198 S. C. 75, 15 S. E. (2d) 846 (1941). Formerly, as shown by our early decisions, in order to be entitled to a disfigurement, award, the claimant had to prove that the disfigurement reduced his earning capacity or handicapped him in obtaining employment, such proof not being required, however, where the disfigurement was to face or head. In the cited cases it was held that post

injury earnings equal to pre-injury earnings did not bar a claim for disfigurement, there being evidence that the earning capacity of the claimant had actually been impaired. All of our decisions emphasize that the object of the Workmen's Compensation Act is to relieve an injured workman for a loss or impairment of his *capacity to earn wages.* We have repeatedly held that the Act is entitled to a liberal construction in order to effectuate its purposes, and I cannot believe that the legislature intended to allow no compensation to an injured workman, who in truth and fact has a diminished earning capacity, solely because his post injury earnings perchance equal or exceed his pre-injury earnings.

In my view of the matter, the factual issue before the Commission for determination was the extent to which the claimant's earning capacity had actually been diminished. His post injury wages was a factor to be taken into consideration along with other evidence, but such was not conclusive of the question. An annotation in point is contained in 149 A. L. R. commencing at page 413. The pertinent general rule is stated at page 415 as follows:

"As a general rule, the mere fact that after the injury the employee receives, or is offered, his former wages, or a larger sum, will not, by itself, preclude recovery of compensation under the various workmen's compensation statutes. This statement, however, does not mean that the amount of wages actually received by the injured employee after he has suffered an accident is of no importance whatsoever in determining the employee's right to compensation. On the contrary, it is well established that such fact is evidence, though not conclusive evidence, of the employee's earning power."

In Larson's Workmen's Compensation Law, Vol. 2, Sec. 57.20, it is stated that "the test remains one of capacity" under statutes identical to the South Carolina Act which call for comparison between wages before the accident with "wages he is able to earn thereafter." To quote further from the said section.

"It is uniformly held, therefore, without regard to statutory variations in the phrasing of the test, that a finding of disability may stand even when there is evidence of actual post-injury earnings equalling or exceeding those received before the accident. The position may be best summarized by saying that actual post-injury earnings will create a presumption of earning capacity commensurate with them, but the presumption may be rebutted by evidence independently showing incapacity or explaining away the post-injury earnings as an unreliable basis for estimating capacity."

"In determining loss of earning capacity, earnings after the injury must be corrected to correspond to the general wage level in force at the time pre-injury earnings were calculated." Larson, Workmen's Compensation Law, Sec. 57.32.

In support of the last quoted proposition, clearly the majority rule, there is cited, *inter alia, Whyte v. Industrial Commission,* 71 Ariz. 338, 227 P. (2d) 230 (1951). In that case the Arizona court was concerned with statutory language precisely the same as ours—"wages which he is able to earn thereafter." The court held that the word "thereafter" must be construed to refer to conditions existing immediately after the accident, not many years later. Speaking of this Arizona decision. Larson says that "The Arizona court's holding is the only possible result, if 'capacity' it to be given any rational meaning."

We quote the following from the Whyte decision,

"As above stated the law clearly fixes his earning capacity immediately prior to his injury as one of the predicates for determining the loss in his earning capacity. We think it reasonable and logical to conclude therefore that in defining the other predicate as 'the monthly wages he is able to earn thereafter' the word 'thereafter' was intended to mean and must of necessity be construed to mean, 'immediately thereafter' and that the second predicate based upon his new employment must be determined by ascer-

taining what wages others in the same or most similar class in the same or most similar employment in the *same or similar locality* were receiving at the time the injury occurred." (Emphasis added.)

In the *Whyte* case it was further said that to use the wage scale of March 1942 as a yard stick of claimant's pre-injury earning capacity and the wage scale of November 1949 as a yard stick for his post-injury earning capacity would be comparable to using a three foot yard stick for measuring the one and a five foot yard stick for measuring the other. In the instant case, using the wage scale prevailing in Hampton, South Carolina in June 1964 to measure the first predicate, and the wage scale prevailing in Charleston, South Carolina in November 1966, to measure the latter, is equally incongruous, inequitable and unjust. Such application would result in an absurdity, in violation of one of the cardinal rules of statutory construction.

In the instant case it is clear that the claimant has suffered an actual loss of earning capacity in that he is earning less money than he would be earning were it not for his injury. It is equally clear that had he remained in Hampton, assuming the same conditions which existed at or near the time of his injury, he would be earning less than his pre-injury wage. It is my considered view that his post injury impairment of earning capacity should be factually determined in the light of all of the evidence and in the light of conditions existing in Hampton, or at least a similar locality, at or near the time of the injury. The Commission found that claimant had sustained a 30% permanent physical impairment, but made no pertinent finding of fact, as opposed to a conclusion of law, with respect to the impairment of claimant's *earning capacity*. In the absence of any such finding, the circuit judge was not warranted in reinstating the award of the single Commissioner and ordering the payment of compensation in accordance therewith.

While there is uncontradicted evidence to the effect that the claimant has sustained some impairment of earning

capacity, the extent thereof is an issue of fact for determination by the Commission, and the judgment of the lower court should be reversed and the cause remanded to the Commission for further proceedings in accordance with the views herein expressed, including the taking of any additional evidence which the Commission may deem necessary.

LEWIS, J., concurs.