**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Barry Adickes, Claimant, Respondent,

v.

Philips Healthcare, Employer, and Fidelity and Guarantee Insurance Company, Carrier, Appellants.

Appellate Case No. 2016-000514

―――――――――

Appeal From The Workers' Compensation Commission

―――――――――

Unpublished Opinion No. 2018-UP-027
Heard November 9, 2017 – Filed January 17, 2018

―――――――――

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

―――――――――

Brooke Ann Payne and Ryan Daniel Oxford, both of Lueder, Larkin & Hunter, of Mount Pleasant, for Appellants.

William L. Smith, II, of Chappell Smith & Arden, and Blake A. Hewitt, of Bluestein Nichols Thompson & Delgado, LLC, both of Columbia, for Respondent.

Grady Larry Beard, Nicholas L. Haigler, Ben Gibbs Leaphart, Jr., all of Sowell Gray Robinson Stepp &

Laffitte, LLC, of Columbia, for Amicus Curiae South
Carolina Self-Insurers Association, Inc.

---

**PER CURIAM:**  In this workers' compensation case, Philips Healthcare
(Employer) and Fidelity and Guarantee Insurance Company (collectively,
Appellants) appeal the order of the Appellate Panel of the Workers' Compensation
Commission (Appellate Panel) affirming the single commissioner's award of
benefits to Barry Adickes.  On appeal, Appellants argue the Appellate Panel erred
by (1) finding Adickes to be at maximum medical improvement (MMI) for all of
his work-related injuries, (2) determining Adickes was entitled to permanent partial
disability (PPD) benefits due to loss of earning capacity, and (3) inaccurately
awarding PPD wage loss benefits pursuant to section 42-9-20 of the South
Carolina Code (2015).  We affirm in part, reverse in part, and remand.

1.     We find substantial evidence in the record supports the Appellate Panel's
finding Adickes was at MMI for his right shoulder.[1]  *See Fishburne v. ATI Sys.
Int'l*, 384 S.C. 76, 85, 681 S.E.2d 595, 599 (Ct. App. 2009) ("The Appellate Panel's
decision must be affirmed if supported by substantial evidence in the record.").  Dr.
Jerry Barron rated Adickes's right shoulder as having a fifteen-percent "permanent
impairment" and noted, "It is further my opinion that he will most probably
eventually require additional surgery to the right shoulder based on the MRI
findings as well as ongoing symptoms.  It is reasonable for Mr. Adickes to try to
avoid surgery as long as possible."  Appellants correctly note Dr. Barron did not
specifically state Adickes was at MMI, but we find he meant exactly that by
referring to the fifteen-percent impairment as "permanent."  The fact Dr. Barron
recommended additional treatment—surgery or otherwise—does not negate his
opinion Adickes's impairment was permanent.  *Curiel v. Envtl. Mgmt. Servs. (MS)*,
376 S.C. 23, 29, 655 S.E.2d 482, 485 (2007) ("The term '[MMI]' means a person
has reached such a plateau that, in the physician's opinion, no further medical care
or treatment will lessen the period of impairment.").  Importantly, Appellants did
not provide a contrary medical opinion to the Appellate Panel, and Appellants had
the right to seek such a contrary opinion.  *See* S.C. Code Ann. Regs. 67-509(A)
(2012) ("The employer's representative chooses an authorized health care provider
and pays for authorized treatment.").

---

[1] Appellants present their issue on appeal as challenging the Appellate Panel's
finding of MMI for "all of his work-related injuries" but concede in their brief
Adickes was at MMI for his head and cervical spine.

2.      We find substantial evidence in the record supports the Appellate Panel's finding Adickes's injuries caused a loss of earning capacity. *See Fishburne*, 384 S.C. at 85, 681 S.E.2d at 599 ("The Appellate Panel's decision must be affirmed if supported by substantial evidence in the record."). Both the single commissioner and Appellate Panel relied on Dr. L. Randolph Waid's neuropsychological evaluation, Dr. Howard Mandell's deposition testimony, and Joel Leonard's vocational evaluation and related deposition. Dr. Waid's evaluation noted Adickes likely experiences "executive dysfunction" that "potentially affect[s] both cognitive and emotional domains." He further opined Adickes "experiences episodic forgetfulness due to the interfering effects of attention/executive difficulties and headaches."

Dr. Mandell was Adickes's treating neurologist for more than three years following the accident. He testified directly regarding Adickes's injuries and consequences thereof, opining the effects of Adickes's injuries were likely "barriers" to his employment potential. Dr. Mandell explained Adickes's struggle with concentration and focus were "clearcut[,] persistent problem[s] that [weren't] going away" and noted, "I think this is the way he is, and [these are] the leftovers that happened from the traumatic brain injury." Dr. Mandell also endorsed Dr. John Welshofer's fifteen-percent permanent impairment rating of Adickes's brain for continuous postconcussive symptomatology and headaches.

Leonard's vocational evaluation[2] opined Adickes's employability was "most consistent" with Profile B. Leonard explained, "Within the parameters of Profile B, [Adickes's] current weekly wage (estimated at $1,057.69 [or $55,000 annually]) would be considered a reasonable and proper representation of his likely earning capacity subsequent to the March 2011 accident." During Leonard's deposition, he reviewed additional information that was unavailable to him initially, including an extensive review of Adickes's work history with Employer, Dr. Mandell's deposition testimony, and Dr. Waid's neuropsychological evaluation. Despite the additional information, Leonard maintained his opinion that Profile B best described Adickes's employment potential. He explained the evidence in the record supported Adickes's wage loss was "due to some cognitive dysfunction."

---

[2] Appellants contend Leonard's vocational report should be "discredited as wholly unsubstantiated." However, the Appellate Panel found the evaluation credible and helpful to its ruling. *See Potter v. Spartanburg Sch. Dist. 7*, 395 S.C. 17, 23, 716 S.E.2d 123, 126 (Ct. App. 2011) ("The final determination of witness credibility and the weight to be accorded evidence is reserved to the Appellate Panel.").

We find Adickes's PPD and resulting wage loss is supported by competent expert opinion, including Dr. Welshofer's permanent impairment rating, Dr. Mandell's deposition testimony, Dr. Waid's neuropsychological evaluation, and Leonard's vocational evaluation.

3.	We find the Appellate Panel erred in its interpretation and application of section 42-9-20 of the South Carolina Code (2015). *See State Acc. Fund v. S.C. Second Injury Fund*, 409 S.C. 240, 245, 762 S.E.2d 19, 21 (2014) ("Although the [c]ourt may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact, the [c]ourt may reverse a decision of the [Appellate Panel] if it is affected by an error of law . . . ."). Accordingly, we reverse Adickes's award of PPD benefits and remand to the Appellate Panel for a new calculation.

The applicable portion of section 42-9-20 reads: "In no case shall the period covered by such compensation be greater than three hundred forty weeks from the date of injury." We find this is a limiting clause that restricts the timeframe and amount of coverage and should be strictly interpreted. *See Lewis v. L.B. Dynasty*, 411 S.C. 637, 641, 770 S.E.2d 393, 395 (2015) ("We construe workers' compensation law liberally in favor of coverage to further the beneficent purpose of the Workers' Compensation Act; accordingly, only *exceptions and restrictions to coverage are strictly construed*." (emphasis added)).

We find the plain language of the statute limits PPD benefits to 340 weeks from the date of injury, contrary to the Appellate Panel's interpretation and award. The statute explicitly mandates that in "no case" will PPD benefits be available to a claimant beyond the term of 340 weeks "from the date of injury." *See Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) ("Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute."). We further hold this interpretation of section 42-9-20 accords with the legislature's intent. *See id.* ("The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature."). PPD benefits are intended to compensate an injured claimant for the loss of earning capacity over the designated 340 weeks from the date of injury, rather than compensate an injured claimant with a 340-week "award" of PPD benefits for specific injuries. *See Owens v. Herndon*, 252 S.C. 166, 169, 165 S.E.2d 696, 698 (1969) ("[C]ompensation under the Act is not awarded for the physical injury as such, but for 'disability' produced by such injury. The disability is to be measured by the employee's capacity or incapacity to earn the wages which he was receiving at the

time of his injury." (quoting *Keeter v. Clifton Mfg. Co.*, 225 S.C. 389, 392, 82 S.E.2d 520, 522 (1954))).  The record is clear Adickes did not suffer a wage loss until he was terminated from Employer.  He cannot be compensated for "lost wages" while he worked and earned his usual full-time salary.  Under the Appellate Panel's interpretation, Adickes would receive PPD wage loss compensation for the period he worked full-time and earned a full-time salary.  We hold the Appellate Panel erred by extending the timeframe and award for PPD benefits in contravention of the plain language of section 42-9-20 and the legislative intent for compensation.  *See Hodges*, 341 S.C. at 85, 533 S.E.2d at 581 ("Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning.").  Accordingly, we reverse the Appellate Panel's award of 340 weeks' compensation commencing January 17, 2014, and remand for a new calculation of benefits consistent with the plain language of section 42-9-20.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**LOCKEMY, C.J., and KONDUROS and HILL, JJ., concur.**