15290

HAMILTON v. LITTLE *ET AL.*

(15 S. E. (2d), 662)

July, 1940.

*Mr. G. Lloyd Ford,* of Conway, for appellant, ▮▮▮▮

*Messrs. Elliott, McLain, Wardlaw & Elliott,* of Columbia, for respondent, ▮▮▮▮

July 7, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE BAKER.

The principal question herein presented by this appeal from the order reversing the action of the full commission, and the single commissioner in awarding the claimant the sum of $500.00 for bodily disfigurement, is difficult of determination, the difficulty arising not so much in the application of the previous decisions of this Court, but by reason of the findings of fact by the Industrial Commission, by which we are bound if there is any testimony from which a reasonable inference can be drawn to sustain its findings of fact.

Appellant, hereinafter called the claimant, presents his appeal in the form of two questions based upon his exceptions. The first question, which is not phrased either as the claimant or the respondents have expressed it, is: Is there any evidence in the record to support the findings of fact by the Industrial Commission upon which claimant received an award for bodily disfigurement? The second issue, which questions the sufficiency of respondents' exception upon appeal to the Court of Common Pleas was not raised in the appeal before the Circuit Court, and therefore not passed upon, and is not properly before us.

A correct and succinct statement of the case is found in the first portion of Judge Lide's order, from which we quote:

"L. T. Hamilton, claimant above named, was employed by H. P. Little, and in the course of his employment, by reason of an accident his left leg was broken and he has since been disabled in the regular performance of the sort of work for which he was trained, to wit: 'a constructional steel worker and carpenter.' He is a young white man about 27 years of age with little education. It was adjudged that he was partially disabled in his left leg and therefore entitled to 45 per cent 'loss of and functional impairment of the leg,' pursuant to which he has been paid compensation 'at an agreed to average compensable wage of $9.00 per week'; and also all hospital and medical bills, etc., have been paid. All of these matters were satisfactorily adjudicated, and the present appeal relates solely to an additional claim for compensation by reason of an alleged serious disfigurement.

"This claim came on to be heard before Coleman C. Martin, Esq., one of the commissioners, on February 8, 1940, and at this hearing the testimony of Dr. J. K. Stalvey and the claimant himself was taken. Upon this testimony hearing Commissioner Martin awarded the claimant the sum of $500.00 as compensation for the alleged disfigurement, and in his order making the award he finds that the claimant

has sustained 'in addition to a permanent partial disability in his left leg, a permanent disfiguring appearance from a decided limp in his left leg.' And it is further indicated that the injury to his left leg resulted from an enlargement of this leg in certain areas from an inch to an inch and a half as compared to his right leg, and in other areas there was a shrinkage or atrophy from an inch to an inch and a half in circumference, and that in addition to these swollen and atrophied areas 'the tibia bone did not unionize in a uniform way.' The hearing Commissioner further found that the claimant had been unable to secure employment of the nature and kind with which he is familiar and accustomed to doing, and that he has been refused employment because of his disfiguring appearance, 'largely on account of the limp and his inability to pursue the heavy and arduous duties as a constructual steel worker in construction work.'

"The award of the hearing Commissioner was reviewed by the full Commission on March 11, 1940, and affirmed by a majority of the Commission. An appeal was taken to this Court, and this appeal came on to be heard before me at my chambers at Marion on July 3, 1940, and after argument of counsel was taken under advisement."

The disfigurement being that of the body, "the criterion of the right of claimant to compensation under the Act is this: Has his injury lessened his earning capacity and deprived him in whole or in part of the power to obtain employment?" *Manning v. Gossett Mills et al.,* 192 S. C., 262, 6 S. E. (2d), 256, 259. Although the word "injury" is employed in the statement of the criterion, it is obvious that its usage is in the sense of "bodily disfigurement."

The hearing commissioner divided his findings of fact into seven numbered paragraphs, which are reported in condensed form in that portion of Judge Lide's decree which we have quoted, but we think it best to restate the second, sixth and seventh findings of fact in the language of the commissioner:

"Second. It is further found as a fact that claimant has sustained in addition to a permanent partial disability in his left leg, a permanent disfiguring appearance from a decided limp in his left leg."

"Sixth. Further, it is found that he has made repeated attempts to secure employment of the nature and kind with which he is familiar and accustomed to doing and has been refused employment because of his disfiguring appearance, largely on account of the limp and his inability to pursue the heavy and arduous duties as a constructural steel worker in construction work.

"Seventh. It is further found that the medical attendant will not recommend him for employment of that nature or of any nature where it requires steady, healthy and balanced equilibrium of the body and all parts thereof.

"From the Commissioner's observations, it is found that this rather heavily-built young unmarried man has a decided limp in his left leg, readily apparent to anyone upon his approach or in his presence."

The award of the hearing commissioner and the full commission is reversed by the order of Judge Lide, who states in the beginning of his order that "no issues of fact are really involved but that the issue raised by the appeal is one of law. That is to say, what is the legal result of the admitted facts?" In the reversing order it is further stated:

"The recent case of *Stone v. Ware Shoals Mfg. Co.,* 192 S. C., 459, 7 S. E. (2d), 226, 228, decided February 16, 1940, in which the opinion was delivered by Mr. Justice Fishburne, very clearly lays down the governing principles in a case of this character. That particular case involved rather extensive scars on the left arm on the claimant, and an award was made by the full Commission for serious bodily disfigurement affirming the hearing Commissioner. On appeal to the Circuit Court, Judge Featherstone affirmed the full Commission, but his judgment was reversed by the Supreme Court. The Court said:

" 'The bodily disfigurement, as disclosed by the evidence, is neither a serious nor an unnatural one which would have a harmful effect upon the ability of the respondent to obtain or retain employment. There is an absence of proof that the disfigurement is grotesque or repulsive so as to render the respondent offensive to sight, or less pleasing to employer, fellow worker or customers.'

"The Court also approved the holding in the case of *Poole v. Saxon Mills* [192 S. C., 339], 6 S. E. (2d), 761, to the effect that the word 'serious' in the phrase 'serious bodily disfigurement' connotes that the disfigurement should be much more than slight, and partaking of permanency; and further that the word 'disfigurement' means that 'which renders unsightly, misshapen, imperfect, or deforms in some manner.' "

The legal principles enunciated in the two foregoing cases and the criterion of the right of claimant to compensation as stated in *Manning v. Gossett Mills, supra,* stand without question but we believe the distinguished and learned Circuit Judge has fallen into inadvertent error in the application of these principles to the facts of this case by an interpretation of the language of the witnesses whereby he reaches a different conclusion of fact from that of the fact-finding body. It is the duty and power of the appellate Courts to study the testimony to determine whether there is any evidence to support the findings of fact of the fact finding body (the Industrial Commission), but an interpretation or construction thereof adverse to that found by the commission, when the evidence is susceptible of more than one reasonable interpretation or meaning, is an invasion of the province of the commission.

We use the words "interpretation" and "construction" in that Judge Lide in referring to the testimony of Dr. Stalvey and the claimant says:

"I think it is manifest to anyone reading the testimony here that both Dr. Stalvey and the claimant did not apperceive the distinction between disability and disfigurement.

It is quite true that the claimant was seriously disabled, or the award of compensation for permanent partial disability in his left leg was made on account of such disability; and because of such disability he is and has been no doubt seriously handicapped in procuring employment. But this handicap plainly appears to me to be due to his disability and not to the alleged disfigurement.

Dr. Stalvey, who is a physician examining applicants for employment for the Santee-Cooper project, says:

" 'He can't get it there through me and if he can't get it through me, he can't get it. I could not recommend him, because he is not normal in that leg. He is more apt to fall or hurt himself on account of it, I'll say to be plain.'

"But it is quite clear that Dr. Stalvey had reference to the disability resulting from the injury to his leg. And later in response to a question as to whether the appearance of the claimant, 'in other words disfigurement,' would result in turning him down, he says:

" 'Well, with his clothes on, shoes on, socks on and pants down, I could not see any—probably; I would not be able to answer that question, Mr. Woodward.'

"The claimant himself testified that he had been refused jobs and had been handicapped in attempting to procure employment on account of his disfigurement, but I think it is quite evident that he really referred to his disability and not disfigurement, for the final answer in his testimony is as follows:

" 'Well, they figured I was not able to do the work I was applying for, you see. I have been up on buildings as high as twelve stories high.' "

Referring to the questions and answers immediately prior to the final answer in claimant's testimony, we quote a portion thereof to show that the hearing commissioner and the full commission had evidence before them, in the record, in support of their interpretation or findings of fact. Upon cross examination of claimant and in that portion thereof relative to his seeking employment, the following appears:

"Q. * * *. But none of them turned you down on account of your appearance? A. Just on my limping when I walk.

"Q. Well, they did not object to that, did they? There are a good many good workers who limp? A. Well the Companies know.

"Q. But they did not turn you down on that account? A. Yes, I have had them turn me down on that account."

Here is a positive statement by claimant that because of his limp he had been refused employment. It is readily conceivable that although the actual appearance of the leg is concealed from the sight of the public by reason of his clothing, yet the limp would be cause for rejection in the type of employment upon which claimant depended for a living.

On the direct examination of Dr. J. K. Stalvey, who had treated claimant, and who is an examining physician for applicants for employment for the Santee-Cooper project, the following questions and answers are found:

"Q. This stiffened, disfigured limb as you have described? A. Yes.

"Q. So affects it that he can get no employment there? A. He can't get it there through me and if he can't get it through me he can't get it. I could not recommend him, because he is not normal in that leg. He is more apt to fall or hurt himself on account of it, I'll say to be plain.

"Q. Then, also, doctor, you know the kind of work that he has done all of his life, that is, being a patient of yours? Is it your opinion that some disfigurement that he has here would apply to his employment generally? A. Certainly. Any kind of work that he is capable of doing. He might learn something that he could do that would be profitable and all right but taking him just like he is and what he can do now, he can't do it.

"Q. Then, doctor, if I understand you, it is your opinion that this disfigured leg would be the cause of impairing his ability to get employment in the kind of work that he can do? A. Certainly."

On cross examination Dr. Stalvey described in detail the condition and appearance of claimant's leg and stated in answer to a question based upon the point whether the disability or the disfigurement interfered with claimant's occupation, the following: "A. Well, that is what I figured, his disfigurement in connection with his occupation. I don't see how you can differentiate between the two, the disfigurement not having something to do with his occupation and his occupation has already been determined. Disfigurement is bound to have something to do with his occupation, whether it has been passed on or not."

In addition to the oral testimony of Dr. Stalvey and of the claimant, the single commissioner, as well as the full commission, had the benefit of observing the claimant, which observation afforded them an opportunity to determine, from concrete evidence, the actual outward appearance of claimant's disfigurement. Judge Lide, not having the benefit of this personal observation, comments upon the difference in the degree of the limp as described by Dr. Stalvey, who refers to it as a slight limp, and as described by the hearing commissioner in terms of a "decided limp" and as "particularly noticeable." The differences appearing from the testimony in the degree of the limp is but another instance of contradictions in the evidence of a litigant that have to be decided by the fact-finding body. However, the order of reversal goes on to say, "it will be observed that it is undisputed that the only visible disfigurement of any kind is the limp, for the enlarged and atrophied areas in his left leg and the injury to the tibia bone causing a limp are, of course, all concealed by his clothing. This alleged disfigurement by reason of this limp is obviously neither grotesque nor repulsive, nor is the claimant made offensive to the sight of his associates, or his appearance less pleasing to persons of ordinary sensibilities." The record discloses that the abnormality of carriage which claimant suffers is due to the malformation of his leg, after the injury, resulting in an unusual physical condition and only known to the

public by reason of the limp, the actual appearance of the disfigurement being concealed by clothing. In cases of bodily disfigurement it is not necessary to have the actual disfigurement under the observation of the public, but the essential is the existence of a disfigurement of the body that lessens earning capacity and is in deprivation of the power to obtain employment. The actual appearance of the disfigurement is the criterion in cases of facial disfigurement, but not necessarily in bodily disfigurement. As was expressed in *Burnette v. Startex Mills et al.*, 195 S. C., 118, 10 S. E. (2d), 164, 166:

"The whole philosophy of our Workmen's Compensation Act is to compensate for, or relieve from, the loss or impairment of an employee's capacity to earn, or from the deprivation of support from his earnings, and not to indemnify for any physical ailment or impairment as such, except in the classes of cases specifically provided in the Act; to exclude from allowable elements of compensation everything except diminution of earning power. Bodily disfigurement, when shown to affect this earning power, is therefore logically an element of compensation specifically provided for in the Act, to the extent therein covered, and we have heretofore so applied the Act."

The lessening of earning capacity and loss of power to obtain employment in whole or in part may be by reason of nothing more than the existence of a bodily disfigurement or may be by reason of a bodily disfigurement that is grotesque or repulsive so as to render one offensive to sight or less pleasing to employer, fellow worker or customers.

The case of *Manning v. Gossett Mills, supra,* and *Johnston v. Sam E. Finley Construction Company et al.,* 192 S. C., 392, 393, 7 S. E. (2d), 1, are distinguishable from the case at bar in that the disfigurement in those cases did not lessen the earning power of the respective claimants nor deprive them in whole or in part of the power of obtaining em-

ployment. In other words, the bodily disfigurement in no wise affected their earning capacity.

The order appealed from holds that the award for bodily disfigurement in this case would be inconsistent with the judgment of the Court in the case of *Murdaugh v. Robert Lee Construction Company,* 185 S. C., 497, 194 S. E., 447, in which case the claimant's leg, as a result of an accident was at 'least one and one-quarter to two inches shorter than the right leg, causing a noticeable and very apparent limp in the left leg. Compensation was allowed by the full commission for disability, but the claim for disfigurement was rejected. Upon appeal Judge Gaston allowed compensation for disability and bodily disfigurement. This Court, on appeal, reversed Judge Gaston, holding that although the commission erred in deciding it could not award compensation for loss and disfigurement to the same member of the body, nevertheless the commission also found as a fact that there was no disfigurement as would handicap the claimant in seeking employment.

The inconsistency between the case just above discussed and the present case lies not within the judgment of this Court but in the findings of fact by the commission.

In *Stone v. Ware Shoals Mfg. Company et al.,* 192 S. C., 459, 7 S. E. (2d), 226, 227, the claimant had rather extensive scars on his left arm for which compensation for serious bodily disfigurement was awarded by the commission and affirmed by the Circuit Court. The physician who operated upon the arm stated that "the bone now is as strong as it ever was," there being the slightest amount of deformity, that claimant, a clerk in employer's furniture department, could do heavy work, even play professional football and that he could see nothing in the appearance of the scars as would interfere with claimant's obtaining employment of the kind he had been doing.

In reversing the order of the Circuit Judge, this Court stated:

"The evidence ought to show that the bodily disfigurement for which compensation is sought bears some relation to the capacity or incapacity, by reason of it, to secure profitable employment. There should be some showing that by reason of the disfigurement there is no longer any market for the claimant's labor. There is no evidence in the record to suggest this. * * *

"In fact, nothing in the evidence reasonably suggests that he has been or will be handicapped by reason of this disfigurement in procuring employment, or that his earning capacity has been lessened thereby; nor is it suggested that he has failed to secure employment or retain employment by reason of the operative scars referred to."

As held in *Poole v. Saxon Mills,* 192 S. C., 339, 6 S. E. (2d), 761, 765, the bodily disfigurement should be a serious bodily disfigurement, the word "serious" being "used in the sense that the disfigurement should be much more than slight, and partaking of permanency." While there may have been a question of fact whether the limp was "slight," as described by Dr. Stalvey, or "decided" as referred to by the hearing commissioner, this issue of fact is concluded in favor of claimant as the hearing commissioner had the right to observe, as competent evidence, the claimant and his limp. That it partakes of permanency is shown by Dr. Stalvey's statement at the hearing: "The disfigurement will be there as long as he lives. When he turns up his toes, that disfigurement will be there." And there is testimony by the claimant (appellant) that he had been refused work on account of his bodily disfigurement.

The judgment of this Court is that the decree appealed from be reversed, and the award of the Industrial Commission as made reinstated.

Mr. Chief Justice Bonham and Messrs. Justices Fishburne and Stukes concur.