16907

RUTH J. WHITFIELD *ET AL. v.* DANIEL CONSTRUCTION CO.
*ET AL.*
(83 S. E. (2d) 460)

*Messrs. Watkins, Vandiver & Freeman,* of Anderson, *for Appellants,*

*Messrs. Moore & Stoddard,* of Spartanburg, and *Thomas A. Wofford,* of Greenville, *for Respondents,*

September 7, 1954.

J. ROBERT MARTIN, JR., Acting Associate Justice.

This appeal is from an order of the Circuit Court sustaining an award of the Industrial Commission, whereby respondents were awarded death benefits as provided by the South Carolina Compensation Act.

Only one question is presented: Is there any testimony to support the award and the order of the Court?

Appellant's contention is that there is no evidence proving that the death of James C. Whitfield was the result of any accident or injury received by him in the employ of Daniel Construction Company, or as a result of the prescription for

medicine prescribed by a physician employed by the Construction Company to treat him, and there is no testimony from which an inference can be drawn to that effect.

The rule of law applicable is now so well established as to hardly require citation. In the case of *Rudd v. Fairforest Finishing Co.,* 189 S. C. 188, 200 S. E. 727, 728, it is said: "It is a familiar formula that findings of fact by a Board or Commission on a claim under a Workmen's Compensation Act are conclusive; and the Appellate Court will not review such findings except to determine whether there is any evidence to support the award. It may reverse an award if there is an absence of any evidence to support it, but it is not a trier of facts. If the facts proved are capable as a matter of law of sustaining the inferences of fact drawn from them by the board, its findings are conclusive in the absence of fraud, and neither this Court nor the Court of Common Pleas is at liberty to interfere with them. This is but an application to Workmen's Compensation cases of the fundamental principle universal in Courts of law, that whether there is any competent evidence is for the Court to determine, but whether the evidence is sufficient is a question for the jury; the function of the commission being in that respect that of a jury in actions of law." This rule has been adhered to by this Court in numerous cases. *Rice v. Brandon Corporation,* 190 S. C. 229, 2 S. E. (2d) 740; *Layton v. Hammond-Brown-Jennings Co.,* 190 S. C. 425, 3 S. E. (2d) 492; *Ham v. Mullins Lumber Co.,* 193 S. C. 66, 7 S. E. (2d) 712; *Buckman v. International Agriculture Corp.,* 196 S. C. 153, 13 S. E. (2d) 133.

The factual situation of the instant case as shown by the record is: On August 9, 1951, James C. Whitfield, the deceased, 33 years of age was employed by the appellant, Daniel Construction Company, as a structural steel worker in the construction of a building near Anderson, South Carolina. On this date, in the early afternoon, the deceased suffered a superficial laceration of the scalp from an accident admittedly arising out of and in the course of his employ-

ment. He was sent by his employer to a physician of its choice who administered novocaine and repaired the laceration by taking several stitches in his scalp. Upon dismissing decedent, appellant's doctor gave him a prescription for six one and one-half grain Nembutal capsules with directions "one when necessary for pain". This prescription was given to relieve headaches and pain which might develop from the injury to the head.

After having the prescription filled the deceased returned to his work and performed his usual duties until stopping time at 5:30 P. M. Thereafter, he rode with a fellow employee from the job to Williamston, South Carolina, a distance of twenty-one miles. At Williamston the fellow workman who owned the truck got out and allowed the deceased to drive on alone towards his home at Woodruff, South Carolina, some fifty miles away.

The deceased was next seen approximately one hour later on the Augusta Road (some few miles east of Williamston), where he ran off of the highway into a field some 200 yards, causing minor damages to the truck, necessitating its being pulled into a nearby garage for repairs. Thereafter deceased left the garage and after proceeding some two miles crashed the truck into the guard rail of a bridge sustaining injuries which resulted in his death.

The single exception of appellants is premised on their contention that there is no evidence proving directly or by inference that the deceased's death was the result of the scalp injury received by him. It is the contention of the respondents that the Nembutal capsules prescribed by the employer's doctor impaired the mental and physical faculties of the deceased, thereby causing the wreck at the bridge producing the fatal injuries.

There is no question but that the injury to the deceased's head was an accident arising out of and in the course of his employment and was a compensable injury. Every natural consequence which flowed from this

injury, unless the result of an independent intervening cause, sufficient to break the chain of causation, is likewise compensable.

The great weight of authority holds that the aggravation of an injury by medical or surgical treatment necessitated by an original compensable injury is compensable, *e. g., Luongo's case,* 313 Mass. 440, 47 N. E. (2d) 938; *Western Oil Drilling Co. v. Snow,* 185 Okl. 545, 94 P. (2d) 902; *Fitzpatrick v. Fidelity & Casualty Co.,* 7 Cal. (2d) 230, 60 P. (2d) 276; *International Harvester Co. of America v. Scott,* 163 Tenn. 516, 43 S. W. (2d) 1065, and new injuries resulting indirectly from the original injury or from medical or surgical treatment are likewise held compensable, *e. g., McAvoy v. Roberts & Mander Stove Co.,* 173 Pa. Super. 516, 98 A. (2d) 231 (fall from operating table while undergoing operation for bursitis resulting in additional disability); *Randolph v. E. I. duPont de Nemours & Co.,* 130 N. J. L. 353, 33 A. (2d) 301 (obscured vision due to dark glasses prescribed for compensable eye injury caused fall inflicting serious injury to eyes); *Unger & Mahon, Inc., v. Lidston,* 177 Md. 265, 9 A. (2d) 604 (compensable sprained ankle caused later fall, breaking hip); *Continental Casualty Co. v. Industrial Commission of Utah,* 75 Utah 220, 284 P. 313 (leg sprained in compensable accident caused subsequent fall and new hip injury); *Chiodo v. Newhall Co.,* 254 N. Y. 534, 173 N. E. 854 (crutches necessitated by compensable injury, slipped causing new injury).

Liability of the employer for the unexpected effects of medical treatment, such as inoculation required by the employer is imposed in this State, *Alewine v. Tobin Quarries,* 206 S. C. 103, 33 S. E. (2d) 81, and in other states presented with this question, *e. g., Spicer Mfg. Co. v. Tucker,* 127 Ohio St. 421, 188 N. E. 870; *Sanders v. Children's Aid Society,* 238 App. Div. 746, 265 N. Y. S. 698, affirmed 262 N. Y. 655, 188 N. E. 107; *Texas Employees Insurance Ass'n v. Mitchell,* Tex. Civ. App., 27 S. W. (2d) 600; *Nue-*

*deck v. Ford Motor Co.,* 249 Mich. 690, 229 N. W. 438; *Hornetz v. Philadelphia & Reading Coal & Iron Co.,* 277 Pa. 40, 120 A. 662.

The South Carolina Compensation Act, Section 72-306, Code of 1952, provides: "The consequences of any such malpractice shall be deemed part of the injury resulting from the accident and shall be compensated for as such."

The case at hand embraces features of those cases allowing recovery for the aggravation of a compensable injury by medical treatment, of those allowing recovery for new injuries resulting from medical treatment, and also of those allowing recovery for inoculation of an employee at employer's request or for his benefit. If, as respondents contend, the prescription of drugs necessitated by the original compensable injury, impaired the mental or physical faculties of the deceased, thereby causing him to lose control of the truck and crash into the bridge killing himself under such circumstances, they would be entitled to a recovery.

Was there any competent evidence to justify this conclusion which was reached by the Industrial Commission and affirmed by the lower Court?

The evidence viewed in the most favorable light to respondents establishes the following facts and inferences which could reasonably have been drawn by the Commission: The nembutal prescribed is a barbiturate used primarily as a sedative and not for the purpose of relieving pain. The proper prescription for the relief of pain would have been a narcotic, but the company's doctor, who gave the prescription, because of a prior violation by him of Federal laws pertaining, had no license to prescribe a narcotic. Nembutal drugs have different effects on different individuals, sometimes causing confusion, excitement, delirium or an appearance or state of inebriation. Appellants' own expert witness testified that a man could take a one and one-half grain nembutal capsule and be safe, but in response to the question, "If he took two, would he be safe?" his answer

was "No, it would put him to bed." The deceased was not warned of the consequences of taking the capsules in excess; indeed the directions on the label would lead the layman to believe that any number of the capsules could be taken without ill effect. There was positive testimony that the deceased took at least one of the capsules while on the job, the inference being that he was suffering from pain at the time, and it can be reasonably inferred that he took one or more at a subsequent time in view of the evidence given by the farmer (who assisted the deceased when he ran off the road into the field for some unexplained reason) that deceased did not appear to be in control of his faculties, but that there was no evidence of his being under the influence of alcohol. Some two hours later, after the truck was repaired, deceased again ran off the road into the guard rail of the bridge, causing his death.

In the case of *Owens v. Ocean Forest Club, Inc.,* 196 S. C. 97, 12 S. E. (2d) 839, 841, this Court adopted the rule as laid down in 71 C. J., 1085-1086: " 'Circumstantial evidence may be sufficient to support a finding of fact or an award, and a finding or award may be based on inferences drawn from circumstantial evidence; the evidence need not, although it may, be direct or positive. Circumstantial evidence, to establish a claim, need not reach such a degree of certainty as to exclude every reasonable or possible conclusion other than that reached.' "

We are of the opinion that there is competent evidence from which the Industrial Commission was warranted in finding that the deceased came to his death as a result of his taking drugs prescribed by the employer's physician, necessitated by the original injury, which impaired his mental and physical faculties, thereby causing the fatal collision at the bridge.

Judgment affirmed.

STUKES, TAYLOR and OXNER, JJ., concur.

BAKER, C. J., not participating.