17785

Edgar A. BOWEN, Appellant, v. CHIQUOLA MANUFACTURING COMPANY, Respondent

(120 S. E. (2d) 99)

324

*Messrs. Ashmore & Bowen,* of Greenville, *for Appellants.*

*Messrs. Haynsworth, Perry, Bryant, Marion & John-stone,* of Greenville, *for Respondent,*

May 16, 1961.

LEGGE, Justice.

On May 26, 1958, appellant, an employee of Chiquola Manufacturing Co., sustained a compensable low back in- jury as the result of which he was operated on and the fourth and fifth lumbar intervertebral discs were removed. He appeals from a circuit court order reversing the Industrial Commission's award in his favor, and charges that the court erred:

1. In holding that the date of maximum improvement was September 2, 1959, and not December 1, 1958, as found by the Commission;

2. In ordering payment of compensation from September 2, 1959, on the basis of twenty-five per cent partial disability, for two hundred thirty-four weeks;

3. In holding that loss of an intervertebral disc is not loss of a member or organ of the body within the meaning of the provisions of Section 72-153 of the 1952 Code relating to disfigurement; and

4. In holding that appellant, who had received an award of compensation for bodily disfigurement, was not entitled to a separate award for disfigurement based upon the loss of two intervertebral discs.

We agree with the trial judge that there was no competent evidentiary support for the Commission's finding that maximum recovery had been reached on

December 1, 1958. Dr. Brady, the only medical witness, testified that he first saw appellant on June 27, 1958, and that he examined and treated him thereafter until September 2, 1959, at which time in his opinion maximum recovery had been reached and there was a permanent general bodily disability of from twenty to twenty-five per cent. In the course of his cross-examination he stated that in September, 1958, he tried to discharge him and get him back to work, rating his disability at that time as ten per cent permanent partial, and that he did return to work on December 1, 1958, and worked, with increasing difficulty, until May, 1959; but that statement, taken in context with his positive testimony that he continued to attend appellant thereafter until September 2, 1959, and that in his opinion maximum recovery was reached on the date last mentioned, furnishes no reasonable basis for the conclusion that maximum recovery had been reached on December 1, 1958. Further and rather conclusively, supporting the trial judge's ruling on this point, is the Commission's finding that the medical treatment required to lessen appellant's disability, and for the payment of which respondent was held liable, Code 1952, Section 72-305, extended "from the date of the injury, May 26, 1958, to September 17, 1959."

The Commission, having fixed December 1, 1958, as the date of maximum recovery, and having found that the appellant's average weekly wage prior to his injury had been $65.36 and that the average weekly wage received by him during the period December 1, 1958—August 15, 1959, was $47.14, concluded that his permanent loss of wage-earning capacity was $18.22 per week; and it accordingly awarded compensation from December 1, 1958, in the amount of 60% of $18.22, or $10.93, for "three hundred (300) weeks less twenty-three and five-sevenths (23 5/7) weeks for which total disability compensation was paid up to December 1, 1958; and the defendants are to take credit for any compensation paid the employee for the periods of May 4, 1959 to June 5, 1959, and June 5, 1959 to June 26,

1959, and June 26, 1959 to July 27, 1959." The circuit judge, reversing, held that under *Utica-Mohawk Mills v. Orr*, 227 S. C. 226, 87 S. E. (2d) 589, the Commission was required to base its award on the percentage of disability (*i. e. 25%*) as disclosed by the uncontradicted medical testimony; and not on the actual difference between pre-injury and post-recovery wages earned.

We have already announced our agreement with the circuit judge's holding that appellant's compensation should commence as of September 2, 1959, and not December 1, 1958. In our consideration of the second assignment of error before mentioned we are concerned not with the date of maximum recovery, not with credits to which the respondent may be entitled, but solely with the divergent views of the Commission and the circuit court as to the formula to be applied in determining the amount of compensation to which, under the evidence, the appellant is entitled.

Section 72-152 of the 1952 Code, as amended by the Act of March 27, 1953 (48 Stat. at Large, p. 103), provides that for non-schedule partial disability the employee shall be paid "during such disability a weekly compensation equal to sixty per cent of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter", such compensation not to exceed thirty-five dollars a week and to be paid over a period not exceeding three hundred weeks from the date of injury.

The average pre-injury *wage* is generally susceptible of accurate calculation. Post-injury *earning capacity* is something far less tangible. It is thus obvious that proper compensation for non-schedule partial disability can perhaps never be determined with mathematical precision in any case. Some of the problems that have confronted the courts because of the variable and rather intangible factor of post-injury earning capacity are discussed in Larson's Workmen's Compensation Laws, Sections 57:00 through 57:66. We need not explore them here.

Since disability is to be measured by the employee's capacity or incapacity to earn the wages which he was receiving at the time of his injury, *Keeter v. Clifton Mfg. Co.,* 225 S. C. 389, 82 S. E. (2d) 520, the fact that after the injury the employee has not worked and has therefore earned no wages is not in itself determinative of the extent of loss of his earning capacity. So, in *Utica-Mohawk Mills v. Orr, supra,* where the Commission, having found that the injured employee, who was not working, had sustained a thirty per cent disability, awarded compensation on that basis, we declared that an award on a percentage basis complied with the terms of the statute. Actually, the issue in that case involved not the basis of the award, but the calculation of the amount of the weekly payments under it. We rejected the contention that the percentage of partial disability should be applied to the number of weeks, and affirmed the holding of the circuit court that the weekly compensation should be computed by taking thirty per cent of the pre-injury wage and allowing recovery of sixty per cent of that figure for three hundred weeks.

As indicated in *Keeter v. Clifton Mfg. Co., supra,* the amount of the post-injury wage, averaged over a reasonable period of time, is not necessarily conclusive of the diminution of earning capacity. It does, however, furnish a reasonable basis for comparison with the average pre-injury wage in determining whether and to what extent there has been such diminution, assuming a fair appraisal of such variable factors as the employee's willingness to work and the availability to him of employment, within his capabilities, sufficiently regular and continuous to establish his true earning capacity. Cf. Larson's Workmen's Compensation Law, Section 57:35. So also, as indicated in *Utica-Mohawk Mills v. Orr, supra,* may a medical estimate of the percentage of disability furnish reasonable basis for calculation of compensation for partial disability under Section 72-152. The percentage method, as well as the dollars-and-cents method, affords, when fairly applied,

a practical basis for approximating the compensation to which the partially disabled employee should be entitled. Neither method is perfect, and neither is required to the exclusion of the other. Accordingly, where there is medical testimony as to percentage of disability and also testimony as to average post-injury wages, the Commission, in its search for a proper basis for computing reasonable compensation under Section 72-152, may avail itself of either. We think that the trial judge was in error in holding that a finding of disability percentage-wise is the exclusive basis upon which compensation for partial disability under the Code section just mentioned is to be determined.

The award must, of course, be supported by competent evidence; it may not rest upon speculation, as, for example, the possibility that diminution of earning capacity not shown to exist at the time of the hearing may occur at some time in the future as the result of the injury, *Keeter v. Clifton Mfg. Co., supra;* it is subject, within the period limited by Section 72-359, to review on the Commission's own motion, or upon application by any party in interest, upon the ground of a change in the employee's condition, occurring after the award, as the result of the injury. *Cromer v. Newberry Cotton Mills,* 201 S. C. 349, 23 S. E. (2d) 19; *Keeter v. Clifton Mfg. Co., supra; Allen v. Benson Outdoor Advertising Co.,* 236 S. C. 22, 112 S. E. (2d) 722.

The third and fourth assignments of error before mentioned will be considered together. The Commission found that appellant "as a result of the injury has a limp and a scar on his low back which constitutes a serious bodily disfigurement; and as a result of the injury has lost by surgery two intervertebral discs of the low back, which is a loss of a 'member or organ' of the body within the contemplation of the Act". For the "serious bodily disfigurement", it awarded $350.00; for the loss of two intervertebral discs it made an additional, separate, disfigurement award of $1,000.00.

"Disfigurement" has been defined as "that which impairs or injures the beauty, symmetry or appearance of a person or thing; that which renders unslightly, misshapen, or imperfect, or deforms in some manner." *Murdaugh v. Robert Lee Const. Co.*, 185 S. C. 497, 194 S. E. 447, 452; *Poole v. Saxon Mills*, 192 S. C. 339, 6 S. E. (2d) 761; *Tinsley v. Walgreen Drug Co.*, 197 S. C. 415, 15 S. E. (2d) 667; *Godfrey v. Watts Mills*, 199 S. C. 437, 19 S. E. (2d) 902; *Parrott v. Barfield Used Parts*, 206 S. C. 381, 34 S. E. (2d) 802; *Mitchum v. Inman Mills*, 209 S. C. 307, 40 S. E. (2d) 38. Essentially it connotes appearance; but, except in cases of facial disfigurement, the deformity or imperfection need not itself be visible, if its results are *e.g.*, where a noticeable limp follows imperfect union of a broken tibia, the deformity of the bone itself being concealed from observation. *Hamilton v. Little*, 197 S. C. 434, 15 S. E. (2d) 662.

Whether or not the post-operative scar on the lower part of appellant's back is properly a "serious bodily disfigurement" in view of its normal concealment from the public gaze is not in issue here. The Commission found that it was, and found also, as the other disfiguring result of the injury, that appeallant has a noticeable limp. Upon such finding it made a disfigurement award of $350-.00. That award was not appealed from; and it is therefore conclusive. The question now before us is: Could the Commission, having made an award for the only visible disfigurement (scar and limp) resulting from the loss, by surgery, of an intervertebral disc, make an additional disfigurement award based upon the loss of that disc as a "member or organ of the body for which no compensation is payable under the schedule of specific injuries" set out in Section 72-153? We are clearly of the opinion that it could not, because: (1) its award for "serious bodily disfigurement" of necessity included all disfigurement resulting from the injury.; and (2) an intervetebral disc is not a "member or organ of the body" the loss of which, *per se,* will support

an award for disfigurement under Section 72-153. The first of these reasons seems so obvious as to need no elaboration. Rejection of the second would require disregard of the very definition of "disfigurement", and would lead, quite logically, to disfigurement awards for the loss of tonsils or adenoids.

Appellant cites no authority for his contention that a disc is a member or organ of the body within the meaning of the disfigurement provisions of Section 72-153. He relies on *Cagle v. Clinton Cotton Mills,* 216 S. C. 93, 56 S. E. (2d) 747, in which we sustained a disfigurement award for the loss of four front teeth. In that case it was stated that no disfigurement was apparent when the claimant was wearing the dental bridge that had been made for her following her injury; that teeth are members or organs of the body; and that their loss was a compensable disfigurement under Section 31(t) of the Workmen's Compensation Act as amended by the Act of May 20, 1941 (42 Stat. at Large, p. 221), even though the claimant's appearance might not be impaired thereby.

Since the whole concept of workmen's compensation rests upon the principle of compensation for loss or impairment of earning capacity, "disfigurement", within the contemplation of the Act, is essentially related to earning capacity. Larson's Workmen's Compensation Law, Section 58-32. In our early decisions we held that in order to be entitled to a disfigurement award the claimant must prove that the disfigurement reduced his earning capacity or handicapped him in obtaining employment, such proof not being required, however, where the disfigurement was to face or head, since in such cases reduction in earning capacity was presumed to have resulted. *Murdaugh v. Robert Lee Const. Co.,* 1936, 185 S. C. 497, 194 S. E. 447, *supra; Manning v. Gossett Mills,* 1939, 192 S. C. 262, 6 S. E. (2d) 256; *Stone v. Ware Shoals Mfg. Co.,* 1939, 192 S. C. 459, 7 S. E. (2d) 226; *Burnette v. Startex Mills,* 1940. 195 S. C. 118, 10 S. E. (2d) 164; *Jewell v. R. B. Pond Co* 1940, 198 S. C. 86, 15 S. E. (2d) 684.

By the Act of May 24, 1941 (42 Stat. at Large, p. 221), Section 31(t) of the Workmen's Compensation Act was amended by adding, *inter alia,* the provisos, now appearing in Section 72-153 of the 1952 Code: (1) "[that] disfigurement shall also include the loss or serious or permanent injury of any member or organ of the body for which no compensation is payable under the schedule of specific injuries set out in this section", and (2) "[that] in cases of bodily disfigurement it shall not be necessary for the employee to prove that disfigurement handicaps him in retaining or procuring employment or that it interferes with his earning capacity."

The amendment was occasioned by the decision in *Manning v. Gossett Mills, supra.* There this court had construed the "serious bodily disfigurement" provision of Section 31 of the Act as including, in addition to serious facial or head disfigurement, only that affecting the scheduled members of the body, since loss of or serious injury to any of them would obviously handicap the claimant in obtaining employment; and accordingly had held that it did not include the loss of a testicle by surgery. The first proviso of the amendment enlarged the scope of "serious bodily disfigurement" to include loss or serious or permanent injury of non-scheduled members of the body; it did not, either expressly or by reasonable inference, extend the scope of "serious bodily disfigurement" to nondisfiguring loss or injury of such members. Cf. *Parrott v. Barfield Used Parts, supra.* The second was not intended to, and did not, divorce the idea of disfigurement from that of earning capacity; its intent and effect were simply to relieve the claimant of the necessity of proving reduction of earning capacity resulting from the disfigurement, and to substitute for such proof a conclusive presumption that serious bodily disfigurement, as well as that of face or head, will result in reduction of earning capacity.

In *Cagle v. Clinton Cotton Mills, supra,* it was stated that the purpose of the 1941 amendment was to enlarge the

coverage of the Act by making loss or serious or permanent injury of any member or organ of the body for which no provision is made under the schedule of specific injuries a compensable disfigurement as a matter of law, even though the claimant's appearance has not been thereby impaired. To the extent that it suggests that as Section 72-153 now stands disfigurement does not connote appearance, that statement is misleading and incorrect. To presume that disfigurement will impair earning capacity is one thing; to say that disfigurement need not disfigure is another. The result reached in the *Cagle case* was probably the correct one, but it would have rested more soundly on facial disfigurement than on loss of a "member or organ of the body" *per se;* for false front teeth are usually noticeable as such, disfiguring, and presumptively a handicap to one seeking employment. Be that as it may, we find ourselves unable to view absence of a lumbar disc as a disfigurement comparable to a set of false teeth, nor can we agree with appellant in his contention that a disc is a "member or organ of the body" such that proof of its removal, without more, entitles him to compensation for disfigurement under Section 72-153.

To summarize, it is our opinion that the order of the lower court:

1. Correctly held that the date of maximum improvement was September 2, 1959;

2. Was erroneous in its holding that the percentage method is the only basis upon which compensation for partial disability may be computed under Section 72-152; and

3. Correctly held that appellant is not entitled, under Section 72-153, in addition to the award of $350.00 for disfigurement resulting from the loss of two intervertebral discs, to a further disfigurement award for the loss of said discs as "members or organs of the body".

The judgment appealed from is therefore affirmed in part and reversed in part, and the cause is remanded for further proceedings conformable to the views herein expressed.

TAYLOR, Acting C. J., MOSS, J., and STEVE C. GRIFFITH, Acting J., concur.

JAMES HUGH MCFADDIN, Acting Justice (dissenting).

I respectfully dissent from the opinion of Mr. Justice Legge which would affirm the court below which found as a fact that maximum improvement was reached on September 2, 1959, and not December 1, 1958, as found by the Commission. This court said in *Poole v. E. I. DuPont de Nemours & Co.,* 227 S. C. 232, 87 S. E. (2d) 640, 642, in discussing the date of maximum healing for back injury:

"It is difficult to determine with medical certainty the date of maximum healing * * * The determination of this question rests with the commission, and when the testimony of Dr. Moore is considered in connection with the other testimony, we think the findings of the commission thereabout finds support in the evidence."

The testimony of Dr. Brandy in this case was as follows:

"Q. Well, doctor, at that prior date (December 1, 1958) did you think he had reached maximum recovery? A. I thought he had. He was doing fairly well and when he returned to work * * * whether it was just the added strain or working caused him to have some reoccurrence of difficulty. When I examined him in May he did not recall reinjuring his back at that time, but he seemed to have some difficulty all the time *but he had been doing his work.* (Emphasis added.)

"Q. In your opinion, doctor, is a person who has once had this surgery apt to have reoccurrence of the condition if he continues to operate the same or similar job which requires heavy lifting, bending and stooping after surgery as he did before? A. He probably would have some difficulty.

"Q. Not the same degree though? A. It would be more low back pain."

The circuit court below is not concerned with the amount of the testimony nor is it a concern of this court; and neither

the circuit court nor this court has a right to substitute their own opinion as to the weight of the testimony for the opinion of the Commission. In a long line of cases this court has laid down the rule of law recently so aptly put by Mr. Chief Justice Taylor in *Steed et al. v. Mt. Pleasant Seafood Company*, 236 S. C. 253, 113 S. E. (2d) 827, 828:

"that the Industrial Commission is the fact-finding body; and this Court and the Circuit Court both being appellate Courts in workmen's compensation matters, can only review the facts to determine whether or not there is any competent evidence to support the fact-finding body. If there is, both this Court and the Circuit Court are without power to pass upon the force and effect of such evidence. *Rudd v. Fairforest Finishing Co.*, 189 S. C. 188, 200 S. E. 727; *Ham v. Mullins Lumber Co.*, 193 S. C. 66, 7 S. E. (2d) 712; *Jones v. Anderson Cotton Mills*, 205 S. C. 247, 31 S. E. (2d) 447; *Radcliffe v. Southern Aviation School*, 209 S. C. 411, 40 S. E. (2d) 626; *Hiers v. Brunson Construction Co.*, 221 S. C. 212, 70 S. E. (2d) 211; *Mason v. Woodside Mills*, 225 S. C. 15, 80 S. E. (2d) 334; *Whitfield v. Daniel Construction Co.*, 226 S. C. 37, 83 S. E. (2d) 460; *Wilson v. City of Darlington*, 229 S. C. 62, 91 S. E. (2d) 714; *Leonard v. Georgetown County*, 230 S. C. 388, 95 S. E. (2d) 777. When there is a conflict in the evidence either of different witnesses or of the same witness, the findings of fact of the Industrial Commission, as triers of fact, are conclusive. *Cokeley v. Robert Lee, Inc.*, 197 S. C. 157, 14 S. E. (2d) 889; *Gurley v. Mills Mill*, 225 S. C. 46, 80 S. E. (2d) 745."

While it is true that there is some testimony that maximum healing was reached on both dates, courts should not usurp the power of the Commission to evaluate medical testimony relative to when an injured back reaches its maximum healing.

For the foregoing reasons I conclude that the court below was in error in finding that the date of maximum improve-

ment was September 2, 1959, and not December 1, 1958, as found by the Commission. In all other respects I concur in the opinion of Mr. Justice Legge.