### 18965

Hubert G. SMITH, Appellant, v. DANIEL CONSTRUCTION COM-
PANY, and United States Fidelity & Guaranty Company, Re-
spondents.

(169 S. E. (2d) 767)

*Messrs John Bolt Culbertson, Griffin & Howard, Richard J. Foster* and *Abrams, Brown* and *Townes,* all of Greenville, *for Appellant,*

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *for Respondents,*

Sept. 26, 1969.

LEWIS, Justice.

The appellant, an employee of the respondent Daniel Construction Company, fell from a scaffold while about his employment on November 18, 1966. He fractured several ribs in the fall and damaged his spleen. The injury necessitated the surgical removal of the spleen, which left an abdominal scar about nine to ten inches in length. Thereafter, the South Carolina Industrial Commission made an award for Workmen's Compensation benefits to appellant for serious bodily disfigurement, under Section 72-153 of the 1962 Code of Laws, in the amount of $300.00 for the abdominal scar, and an additional disfigurement award of $2,000.00 for the loss of the spleen as an organ of the

body. The lower court reversed the additional award for the loss of the spleen, relying upon the decision in *Bowen v. Chiquola Manufacturing Co.,* 238 S. C. 322, 120 S. E. (2d) 99. The employee has appealed from such ruling and was granted permission to attack the decision in the Bowen case, upon which the judgment below was based. No issue is involved as to the disfigurement award for the abdominal scar.

The question to be decided is whether the Industrial Commission can, under Section 72-153, *supra,* in addition to the disfigurement award for the abdominal scar, make a separate disfigurement award based solely on the loss of the spleen as an organ of the body.

The lower court correctly held that the Commission was without authority, under *Bowen v. Chiquola Manufacturing Company, supra,* to make the additional disfigurement award in this case.

It is conceded that the authority to make the award in question must exist, if at all, under the provisions of Section 72-153. This section contains a list of eighteen specific losses for which disability shall be deemed to continue for the periods stated and a statement of the amount of compensation to be paid in each instance. After the listed specific losses, the section contains the provisions relative to disfigurement. As originally adopted, the disfigurement provisions stated that "in case of serious facial or head disfigurement, the Industrial Commission shall award proper and equitable compensation not to exceed $2,500.00." The Commission was further given the "power and authority to make and award a reasonable compensation for any serious bodily disfigurement received by any employee within the meaning of this article, not to exceed twenty-five hundred ($2,500.00) dollars."

The foregoing provisions were construed by this court as not entitling a claimant to a disfigurement award for loss of a testicle. *Manning v. Gossett Mills,* 192 S. C. 262,

6 S. E. (2d) 256. We also held, in our early cases, "that in order to be entitled to a disfigurement award the claimant must prove that the disfigurement reduced his earning capacity or handicapped him in obtaining employment, such proof not being required, however, where the disfigurement was to face or head, since in such cases reduction in earning capacity was presumed to have resulted." *Bowen v. Chiquola Mfg. Co., supra,* 238 S. C. 322, 120 S. E. (2d) 99.

In 1941, prompted largely by the foregoing interpretations, Section 72-153 was amended by adding the provisos that (1) "disfigurement shall also include the loss or serious or permanent injury of any member or organ of the body for which no compensation is payable under the schedule of specific injuries set out in this section," and (2) "in cases of bodily disfigurement it shall not be necessary for the employee to prove that disfigurement handicaps him in retaining or procuring employment, or that it interferes with his earning capacity."

Appellant contends that when the Legislature added the first proviso, it intended to add an additional category of specific losses to those previously listed in Section 72-153. He states in his brief that "the Legislature intended the amendment as a 'catch-all provision' for injuries not listed in the schedule of specific loss, but permanent in character, for which no other provision is made." In other words, it is argued that the effect of the 1941 amendment was to entitle an employee to two awards for *disfigurement* where there is a loss or serious or permanent injury to a nonscheduled member or organ of the body, one for the impairment of the appearance and the other solely for the loss or injury to the member or organ.

The same contention was made and rejected in *Bowen v. Chiquola Mfg. Co., supra.* We adhere to the construction of Section 72-153 as adopted in that case.

> The purpose and effect of the 1941 amendments to Section 72-153 was stated in *Bowen* as follows: "The first proviso of the amendment enlarged the

scope of 'serious bodily disfigurement' to include loss or serious or permanent injury of non-scheduled members of the body; it did not, either expressly or by reasonable inference, extend the scope of 'serious bodily disfigurement' to nondisfiguring loss or injury of such members. * * * The second (proviso) was not included to, and did not, divorce the idea of disfigurement from that of earning capacity; its intent and effect were simply to relieve the claimant of the necessity of proving reduction of earning capacity resulting from the disfigurement, and to substitute for such proof a conclusive presumption that serious bodily disfigurement, as well as that of face or head, will result in reduction of earning capacity."

The contention of appellant that an award for *disfigurement* may be properly made *solely* for the loss or injury of a non-scheduled member or organ of the body is in effect based upon the view that the 1941 amendment eliminated the necessity that such loss or injury be disfiguring. The invitation in *Bowen* to adopt such construction, which arguably was done in *Cagle v. Clinton Cotton Mills,* 216 S. C. 93, 56 S. E. (2d) 747, was rejected and any holding in *Cagle* to the contrary was overruled. In doing so, we stated: "To the extent that it (Cagle) suggests that as section 72-153 now stands disfigurement does not connote appearance, that statement is misleading and incorrect. To presume that disfigurement will impair earning capacity is one thing; to say that disfigurement need not disfigure is another." The Cagle and Bowen cases are discussed in 2 Larson's Workmen's Compensation Law, Section 58.32.

In Bowen, the Commission made, as it did in this case, two awards for disfigurement, one for *serious bodily disfigurement* and an additional award solely for the loss of two intervertebral discs as organs of the body. In reversing the additional award for loss of the discs, we held that the award for disfigurement for impairment of appearance "of necessity included all disfigurement resulting from the injury."

The judgment of the lower court is accordingly affirmed.

Moss, C. J., and BRAILSFORD and LITTLEJOHN, JJ., concur.

BUSSEY, J., dissents.

BUSSEY, Justice (dissenting):

I most respectfully dissent. The question to be decided is whether the Industrial Commission can, under Sec. 72-153 of the 1962 Code of Laws, make a disfigurement award based solely on the loss of the spleen as an organ of the body. The lower court correctly concluded that under the rationale of *Bowen v. Chiquola Manufacturing Co.*, 238 S. C. 322, 120 S. E. (2d) 99 (1961), and particularly the statutory construction there adopted, the Commission was without authority to make such an award. Admittedly, the appellant cannot prevail unless the decision in Bowen is at least in part overruled, and this we are most earnestly urged to do.

At first blush I was somewhat reluctant to re-examine, let alone overrule, even in part, the decision in Bowen, since it involved the construction of the Workmen's Compensation Law. In two fairly recent cases, *Alexander v. Hunnicutt*, 196 S. C. 364, 13 S. E. (2d) 630 (1941), and *Powers v. Powers*, 239 S. C. 423, 123 S. E. (2d) 646 (1962), we have adhered to the following stated proposition.

"It is manifestly in the public interest that the law remain permanently settled. Especially is this so in the construction of statutes, for if any change in the statutory law is desired, the general assembly may readily accomplish it."

There are, however, other salient and important principles which must of necessity govern the court in the consideration of former decisions of the court and the application of the doctrine of *stare decisis*. As will be hereinafter shown, the decision in Bowen is in part in sharp conflict with at least one other decision of this court, and is the only decision of this court to the same purport and

effect in the particular with which we are here immediately concerned.

In the case of *State v. Williams,* 13 S. C. 546, decided in 1880, the court was asked to and did expressly overrule the case of *State v. Harper,* 6 S. C. 464, decided some five years earlier. The opinion in *State v. Harper* was unanimous, as was the opinion in *State v. Williams.* Chief Justice Willard, who wrote the opinion in the Williams case, participated in the Harper decision. I quote the following pertinent language from his opinion in Williams.

"When the court is asked to follow the line marked out by a single precedent case, it is not at liberty to place its decision on the rule of *stare decisis* alone, without regard to the grounds on which the antecedent case was adjudicated. There are three elements that enter into the authority of a case claiming to stand as a leading case on the general principles of law: First, the unanimity with which its judgment was pronounced; second, the fact that it has been followed; and, third, the duration of time during which it has been openly followed or tacitly assented to. As, then, the authority of such a case is distinctly fortified by the next succeeding case, it is obvious that in the decision of the latter the solidity of the grounds of the former conclusion should be inquired into, for it is only where resort is had to the original sources and a concurring result obtained that the first decision can be said to be fortified by that which follows it. An original case could not possibly gain authority by a mere perfunctory following on the principle of *stare decisis.*"

I quote the following from the majority opinion by Mr. Justice Hydrick in the case of *Daughty v. Northwestern R. Co.* of S. C., 92 S. C. 361, 75 S. E. 553 (1912):

"The doctrine of *stare decisis* should not stand in the way. That doctrine has no application, where there is conflict in the decisions of the court. In that event the court is at liberty to adopt those decisions which are sound in

principle and in accord with right and justice and the statute law, and, overrule those which are contrary thereto."

While two members dissented in *Daughty,* they did not indicate disagreement with the foregoing proposition.

In 1943, the unanimous opinion in the case of *Coleman v. Page's Estate,* 203 S. C. 486, 25, S. E. (2d) 559, was written by Mr. Justice Fishburne. I quote in part therefrom.

"Where conflicting decisions appear to have been made by inadvertence or otherwise, and the position of the Court is thereby rendered uncertain, the rule of *stare decisis* does not necessarily apply. In such event, it has been held that it is the duty of the Court to follow the decision which it conceives is based upon the sounder reasoning, *Daughty v. Northwestern R. Co.,* * *."

"A decision which is to overrule all former precedents and to establish a principle never before recognized should either contain some internal evidence that the prevailing law is to be overthrown, or else be founded upon reasoning far stronger than that comprehended in the previous decisions which by implication it would set aside."

In all of the cases just discussed, the court was concerned with questions of statutory construction, as to which there were prior conflicting decisions, and in each instance the court followed those prior decisions which it determined to be correctly and soundly reasoned, overruling those it deemed were not.

Under the principles enunciated and adhered to in the mentioned decisions, I deem it not only the right but the duty of this court to re-examine the Bowen decision and determine whether the portions thereof pertinent to the present appeal were or not soundly decided. I quote from *Sidney Spitzer & Co. v. Commissioners of Franklin County,* 188 N. C. 30, 123 S. E. 636 (1924), the following apt language:

"There is no virtue in sinning against light or persisting in palpable error, for nothing is settled until it is settled

right. To quote the late Chief Justice Clark: 'There should be no blind adherence to a precedent which, if it is wrong, should be corrected at the first practical moment.' "

In the instant case the authority to make the disfigurement award, based upon the loss of the spleen, exists, if at all, under the provisions of Code Section 72-153, the pertinent portion of which reads as follows:

"In case of serious facial, head or bodily disfigurement, the Commission shall award proper equitable compensation not to exceed two thousand five hundred dollars. *Disfigurement shall also include the loss or serious or permanent injury of any member or organ of the body of which no compensation is payable under the schedule of specific injuries set out in this section.* And in cases of body disfigurement it shall not be necessary for the employee to prove that disfigurement handicaps him in retaining or procuring employment or that it interferes with his earning capacity." (Emphasis added).

The last two sentences above quoted were added to what is now Code Section 72-153, by Act of May 20th, 1941, (42 St. at Large, page 221), which amended what was then Sec. 31 (t) of the Workmen's Compensation Act. It is generally, if not universally conceded that the 1941 amendment was occasioned by the decision of this court in *Manning v. Gossett Mills,* 192 S. C. 262, 6 S. E. (2d) 256 (1939).

In Manning, a disfigurement award based solely on the loss of a testicle was reversed, the court holding, *inter alia,* that where disfigurement was to other than the face or head such did not entitle the employee to a disfigurement award in the absence of proof that such disfigurement reduced his earning capacity or handicapped him in obtaining employment. The holding as to the necessity of proof of adverse effect upon earning capacity was followed in several cases prior to the 1941 amendment. The second proviso of the 1941 amendment was intended to and did change

the holding in the Manning case as to the necessary proof of effect upon earning capacity. The first proviso was unnecessary to accomplish such purpose and was obviously inserted with different intent and purpose. One clear purpose was to authorize a disfigurement award based on nothing more than the loss of an important organ, such as a testicle, without regard to effect, or lack thereof, upon one's appearance. On its face and under its plain language, this proviso declares that as a matter of law the term disfigurement "shall also include the loss or serious or permanent injury to any member or organ of the body for which no compensation is payable under the schedule of specific injuries set out in this section."

The 1941 amendment received the early attention of this court. With respect to the first proviso thereof, Mr. Chief Justice Baker, speaking for a unanimous court, in *Montgomery v. York Mills Inc.,* 204 S. C. 469, 30 S. E. (2d) 68 (1944), had the following to say,

"By the first amendment there was simply added unscheduled members and organs of the body to the scheduled members in Section 31 as subjects for an award for bodily disfigurement, apparently having as its genesis the opinion of this Court in *Manning v. Gossett Mills,* * * *."

In *Ingle v. Duncan Mills,* 204, S. C. 505, 30 S. E. (2d) 301 (1944), the court was concerned with an injury to a testicle which occurred, however, prior to the 1941 amendment. In setting aside an award for the claimant in that case and after a discussion of the 1941 amendment, the court said that such an award was:

"(P)lainly and only for the loss of the organ, which was not a compensable injury at the time of of this accident, in the absence of detriment to earning power resulting from that loss.

"Workmen's compensation, except specific benefits and that allowed for disfigurement under the present law, is for loss or impairment of capacity to obtain employment and earn wages."

The opinion rather clearly shows, I think, that the court considered the claimant entitled to compensation for disfigurement but for the fact that the accident occurred prior to the 1941 amendment.

In *Parrott v. Barfield Used Parts,* 206 S. C. 381, 34 S. E. (2d) 802, (1945), Mr. Justice Stukes, later Chief Justice in his dissenting opinion had occasion to discuss the first proviso of the 1941 amendment, and had this to say.

"Thus in plain language the General Assembly has said that loss or serious or permanent injury of any unscheduled members of the body constitutes disfigurement. Former definitions of this term by the Court have largely lost their significance, in view of this enactment."

The majority opinion and the order of the circuit court, which was reported with approval, did not challenge Justice Stukes' construction of the statute. The other jurists apparently were of the view that the 1941 amendment was not applicable in the particular case and the holding that the claimant was not entitled to disfigurement award was largely, if not wholly, predicated on the view that there was no competent evidence of any disfigurement. Neither the circuit court nor the majority opinion discussed at all the 1941 amendment.

While the court, or members thereof, had prior occasion to consider, directly or indirectly, the 1941 amendment, in 1949, in *Cagle v. Clinton Cotton Mills,* 216 S. C. 93, 56 S. E. (2d) 747, the court was for the first time confronted with a case which came squarely under the first proviso of the 1941 amendment. The opinion for the unanimous court was written by Chief Justice Baker, and the case involved the loss of six teeth, four of which were live teeth and two of which were on a bridge. When the claimant was wearing her new bridge, there was no apparent disfigurement. I quote the following from that opinion:

"It is conceded by counsel engaged in the instant case that the amendment was occasioned by the holding of this

Court in *Manning v. Gossett Mills,* 192 S. C. 262, 6 S. E. (2d) 256. Compensation for bodily disfigurements factually had been provided for in the Act prior to the amendment of 1941. Therefore, we can reach no other conclusion than that it was the intendment of the legislature to enlarge the coverage provided by the Act by declaring the loss or serious or permanent injury of any member or organ of the body for which no provision is made under the schedule of specific injuries, a disfigurement as a matter of law. We agree with appellant's counsel that where any physical member or organ of the anatomy (body), not included in the schedule of specific loss, is lost, or seriously or permanently injured, such loss or injury is covered by the amendment. It is not necessary that the loss or serious or permanent injury to the organ impair the appearance of the claimant."

Thus in Cagle the court squarely, specifically and explicitly adopted and applied the construction of the first proviso of the amendment, previously enunciated by Justice Stukes in Parrott, and impliedly, if not expressly concurred in previously by the court in *Ingle v. Dunean Mills, supra.*

In the light of the foregoing, there appears to have been no lack of unanimity of judicial thought as to the proper construction of the first proviso of the 1941 amendment for a period of twenty years followng its enactment, until the decision in the Bowen case, wherein a different construction was arrived at. Under these circumstances, the applicable principles of law hereinabove set forth require us to re-examine the decision in Bowen and consider the basis, logic and rationale upon which the court arrived at such different construction. Whether the result there reached was or not correct is a matter which we need not now consider. We should re-examine, however, the basis and rationale of the statutory construction therein set forth. I quote the following pertinent and key language from Bowen:

"The amendment was occasioned by the decision in *Manning v. Gossett Mills, supra.* There this court had construed

the 'serious bodily disfigurement' provision of Section 31 of the Act as including, in addition to serious facial or head disfigurement, *only that affecting the scheduled members of the body,* since loss of or serious injury to any of them would obviously handicap the claimant in obtaining employment; and accordingly had held that it did not include the loss of a testicle by surgery. The first proviso of the amendment enlarged the scope of 'serious bodily disfigurement' to include loss or serious or permanent injury of nonscheduled members of the body; it did not, either expressly or by reasonable inference, extend the scope of 'serious bodily disfigurement' to nondisfiguring loss or injury of such members." (Emphasis added).

It clearly appears from the foregoing that the court's construction, arrived at in Bowen, was predicated upon its concept of the holding of the court in Manning. After close scrutiny of the Manning decision, we are unable to find therein any holding construing the "serious bodily disfigurement" provision of the then law as including only that disfigurement affecting the scheduled members of the body. It would thus seem to appear that the construction arrived at in Bowen was based and predicated upon a misconception, at least in part, of what the court actually held in Manning. When such misconception is recognized and removed, it would seem to logically follow that construction of the first proviso of the 1941 amendment as adopted in Bowen would fall for lack of a basis or predicate and without a predicate, had the effect of simply reading such proviso out of the statute. Under the rationale of Bowen, a claimant still would not be entitled to a disfigurement award for the loss of a testicle, the very organ involved in Manning, and the actual genesis of the particular amendment.

I cannot agree that a literal construction of the particular proviso would necessarily lead, as suggested in Bowen, to disfigurement awards for the loss of tonsils or adenoids. While the legislature, by the particular proviso, made the loss or serious or permanent injury to an unscheduled

member or organ of the body a disfigurement as a matter of law, not every such disfigurement is compensable. Even though a claimant has a disfigurement, as a matter of law, such is not compensable unless the disfigurement be of a serious nature. While I think it was the clear intent of the legislature that a claimant be compensated for the loss of an important organ, such as a testicle or spleen, I do not think the legislature intended that the claimant be entitled to a disfigurement award for the loss or injury to some relatively unimportant part, member or organ of the body which is of no serious consequence to the claimant. In the instant case, however, there is no question but what the spleen is an organ of the body, and, moreover, an important organ, having independent functions of its own.

The medical evidence in the record is generally to the effect that medical science still has a lot to learn about the function and importance of the spleen, but it shows that "the spleen is concerned with maintaining the volume of blood at a suitable amount and is also probably concerned with the manufacture and breakdown of blood cells. Its exact functions are still being studied."

There is evidence in the record to the effect that people do survive and function, apparently normally, without the spleen, but, at the same time, medical science does not yet know with any degree of certainty precisely what long range impairment may or may not be involved. Webster's Third New International Dictionary defines spleen as follows:

"A highly vascular ductless abdominal organ of vertebrates that resembles a gland in organization but is closely associated with the circulatory system playing a role in the maintenance of blood volume, production of some types of blood cells, recovery of material from worn-out red blood cells, and probably in the production of antibodies. * * *."

The spleen being unquestionably an organ of the body, I conclude that under the plain terms of the statute, its loss constituted disfigurement as a matter of law. I, moreover, conclude upon the record before us that such disfigurement

was a serious disfigurement within the purpose and intent of the statute and that there was no error on the part of the Commission in basing a disfigurement award thereupon.

In Bowen, the court, *inter alia,* held that the three hundred fifty dollar "serious bodily disfigurement" award based upon a scar and a limp, of necessity included all disfigurement resulting from the injury. Relying upon such holding, the respondent here urges that the three hundred dollar award based on the scar of necessity included all disfigurement resulting from the injury, and that, hence, a separate award based on loss of the spleen was not authorized. Whatever may have been the situation in Bowen, it is here obvious that the award of three hundred dollars based on the scar did not include any compensation for the loss of the spleen, if such loss be compensable, and I conclude that it is. Where there are two or more elements of compensable disfigurement, there can be no vice whatever in separating a disfigurement award and allotting a particular amount to each particular element, so long as the aggregate thereof does not exceed the statutory limitation. Indeed, doing so facilitates review in the event of error, or contended error, on the part of the Commission as to one or more elements of disfigurement.

In the fairly recent case of *Cates v. Hunt Construction Co.,* 267 N. C. 560, 148 S. E. (2d) 604 (1966), the North Carolina Supreme Court had occasion to consider and construe a statutory provision similar to ours. There the claimant lost of kidney and the hearing commissioner awarded $2,500 for the loss of the kidney and $300 for the scar, the maximum limitation for disfigurement in North Carolina being $3,500. The full commission allowed the award for the scar to stand, but reversed the award based on the loss of the kidney, the commission being affirmed by the superior court. The Supreme Court reversed and remanded the proceeding for the entry of an award, not exceeding $3,500, "as the commission 'may deem proper and

equitable compensation,' for the loss of claimant's kidney." The rationale of that decision is in accord with the conclusions I have hereinabove reached as to the proper construction of our statute.

To the extent that *Bowen v. Chiquola Mfg. Co., supra,* is inconsistent with the views hereinabove expressed, the same, in my opinion, should be overruled.